**Dr. Harold D. KLETSCHKA, Plaintiff-Appellant,**

v.

**William J. DRIVER, Individually and as Administrator of the Veterans Administration, et al., Defendants-Appellees.**

**No. 418, Docket 32698.**

United States Court of Appeals
Second Circuit.

Argued March 6, 1969.
Decided April 22, 1969.

Bernard T. King, Syracuse, N. Y. (Blitman & King, Syracuse, N. Y., on the brief), for plaintiff-appellant.

Lillian Z. Cohen, New York, N. Y. (Louis J. Lefkowitz, Atty. Gen., of the State of New York and William G. O'Brien, on the brief), for defendants-appellees, Dr. C. Barber Mueller and Dr. Carlyle Jacobsen.

Stephen R. Felson, Washington, D. C., (Justin J. Mahoney, U. S. Atty., and Samuel T. Betts, III, Syracuse, N. Y., on the brief), for defendants-appellees, William J. Driver, Dr. H. Martin Engle, Dr. Lyndon Lee, Jr., Dr. Morris Thomas, Dr. Lloyd S. Rogers, Dr. Herbert D. Gullick and John W. Macy, Jr.

Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

Appellant Dr. Harold D. Kletschka brought this suit in the Northern District of New York seeking relief from action taken by the Veterans Administration transferring him from the V. A. hospital in Syracuse, New York, to one in Houston, Texas. He alleges that this transfer, and certain other administrative actions taken against him, were the products of a conspiracy among the officials of the V. A. and the state medical school at Syracuse and violated his rights under the Constitution, various federal and state statutory provisions, and state common law. The complaint prays for declaratory and injunctive relief, as well as damages against the defendants.

The district court granted summary judgment in favor of the defendants, relying on different grounds for the various causes of action. The facts alleged were found insufficient to establish the violation of any federal right, and in addition the court ruled that sovereign immunity barred several of the causes of action. No meritorious or substantial federal claim being presented the district court declined to exercise pendent jurisdiction over the state common law claims.

We reverse in part and affirm in part. We hold that material issues of law and

fact, making summary judgment inappropriate, exist with respect to plaintiff's claims that he was entitled by statute and by the due process clause to a hearing prior to his transfer, and with respect to his damage claims under the Civil Rights Act, 42 U.S.C. § 1983. Unless these claims are dismissed upon further fact-finding we hold that the district court should exercise pendent jurisdiction over the closely related damage claims founded upon state common law.

We affirm the district court's disposition of all claims against defendant John W. Macy, Jr., Chairman of the United States Civil Service Commission, on the ground that the actions complained of are nonreviewable, and the damage claims against William J. Driver, Administrator of the Veterans Administration, on the ground of official immunity. We likewise affirm the grant of summary judgment with respect to those claims against defendants which rest upon § 1985 of the Civil Rights Act, the federal and state military reemployment statutes, 50 U.S.C. App. § 459, N.Y.Military Law, McKinney's Consol.Laws, c. 36, § 242, and upon the Administrative Procedure Act except with respect to the statutory claim to a hearing. The case is remanded for further proceedings not inconsistent with this opinion.

The complaint states that Dr. Kletschka commenced work at the Syracuse V. A. Hospital in 1959. He was appointed Assistant Professor of Surgery in 1959 at the Upstate Medical Center in Syracuse, a medical school operated by New York State in close cooperation with the V. A. hospital. Plaintiff served in these two positions until he was recalled to active military duty in October, 1961.

It was during his military service that Dr. Kletschka alleges the defendants began to conspire among themselves to undermine his position at the hospital and the school, the conspiracy culminating in Kletschka's transfer without a hearing to the V. A. hospital in Houston in 1967. The cast of defendants, all sued in both their individual and representative capacities, reads as follows:

William J. Driver—Administrator of the V. A., Washington.

Dr. Lyndon Lee, Jr.—Director of Surgical Services, V. A., Washington.

Dr. Morris Thomas—Hospital Director, V. A. Hospital, Syracuse.

Dr. Lloyd S. Rogers—Chief, Surgical Services, V. A. Hospital, Syracuse.

Dr. Herbert D. Gullick—Assistant Chief, Surgical Services, V. A. Hospital, Syracuse.

Dr. C. Barber Mueller—Chairman, Department of Surgery, State University of New York, Upstate Medical Center, Syracuse.

Dr. Carlyle Jacobsen—President, State University of New York, Upstate Medical Center, Syracuse.

John W. Macy, Jr.—Chairman, United States Civil Service Commission, Washington.

■ From the complaint, the truth of which we must assume for these purposes, the following picture of the conspiracy emerges. In August, 1961, plaintiff had obtained from the V. A. a research grant of approximately $20,000 for use in the development of a "Plastic Implantable Artificial Heart." Defendants Rogers and Mueller attempted to gain control over this project from plaintiff, but he successfully resisted their efforts. However, he was called to military service before he could utilize the grant. In his absence Rogers and Mueller initiated the conspiracy against plaintiff, which was subsequently joined by all the defendants except Macy.

Upon his return to Syracuse from the Armed Forces in October, 1962, plaintiff discovered that his status at the hospital and the school had been reduced as a result of the defendants' efforts. Before his activation he had been the Chief of the Thoracic Surgery division at the hospital, and had performed 90% of the hospital's thoracic operations. On his return he was designated simply a "Staff Physician," and was assigned no thoracic surgery. Likewise, at the school his former three-year term appointment, with

substantial consulting and teaching responsibilities, had been reduced to a "Temporary Appointment" with appreciably fewer responsibilities. The defendants' conspiracy also prevented plaintiff from using any research facilities at the hospital or school, and in particular frustrated his attempts to have the $20,000 research grant restored.

The United States Civil Service Commission refused to intercede on plaintiff's behalf to reverse these changes in status, and this "arbitrary and unreasonable" refusal of the Commission, together with its refusal to block the transfer to Houston, is the basis for the inclusion of Macy as a defendant. But prior to the transfer plaintiff was able to gain, through various federal and state administrative appeals, the restoration of all elements of his premilitary status with the exception of the research grant. Thus while the other elements of status mentioned above are relevant to proof of a conspiracy, the only harm plaintiff presently suffers from is the transfer itself and the continued refusal of the V. A. to restore the research grant.

The next stage of the alleged conspiracy concerned a periodic proficiency review, which was conducted in May, 1966, pursuant to V. A. regulations. Plaintiff was summoned to a counselling session in connection with this review and was told by defendants Rogers and Gullick that he had lost the confidence of his colleagues. It was hinted to plaintiff at this session that he would be terminated from the hospital.

Dr. Kletschka claims that any loss of confidence in him by his colleagues was solely due to the action of the defendants in spreading malicious and slanderous statements concerning his professional competence. These statements were made for the purpose of damaging plaintiff's reputation and were part of the defendants' conspiracy to terminate him without cause from the hospital and the school. Plaintiff claims as evidence of the lack of cause the fact that he has never been furnished with a copy of any charges made against him.

The plaintiff claims that sometime after the counselling session he, in part through the intercession of his congressman, was able to persuade Driver to order an investigation into the harassment of plaintiff concerning his employment at Syracuse. During this investigation the Syracuse officials, having completed their proficiency review of plaintiff, gave him an "unsatisfactory" performance rating in September, 1966. Since under established V. A. policy such a rating cannot be given while an investigation is in progress the rating was later withdrawn at Driver's direction. Similarly Driver postponed the convening of a medical board, which was to have considered the possibility of separating the plaintiff from the V. A.

After receiving the investigation report, which is not part of the record before us, Dr. Driver on January 18, 1967, the same day he withdrew the unsatisfactory rating, ordered the plaintiff transferred to the V. A. hospital in Houston, Texas. Driver denied plaintiff's request for a hearing under 38 U.S.C. § 4110 on the grounds that the transfer was not punitive in nature, and therefore did not constitute "disciplinary action" within the meaning of § 4110.

Plaintiff, in summary, claims that this transfer was the final result of a conspiracy between the federal and state defendants. In addition to depriving plaintiff of his employment rights at the Syracuse hospital and medical school the conspiracy has deprived plaintiff of his reputation and his ability to pursue his profession effectively. Finally, we are told that subsequent to his transfer to the Houston hospital, at which plaintiff was assigned very few duties, plaintiff was transferred to the V. A. hospital in Montgomery, Alabama. Plaintiff has accepted these transfers under protest since had he refused he would have been discharged. The motives alleged by plaintiff for the conspiracy are the resentment of defendants Rogers and Mueller over plaintiff's refusal in 1961 to grant them control over his heart research project, and the desire of the defendants

to retaliate against plaintiff for his prosecution of various administrative appeals.

By this prolix complaint, which seems to run afoul of Fed.R.Civ.P. 8(a), plaintiff attempts to state six causes of action:

Cause one, brought under the Administrative Procedure Act, § 10, complains of the illegal action of the V. A. transferring plaintiff and of the refusal of the Civil Service Commission to prevent this transfer and to restore the heart research grant. Plaintiff prays for declaratory and injunctive relief.

Cause two alleges that the actions of the V. A., the state medical school, and the Civil Service Commission have deprived plaintiff of due process within the rationale of Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966).

Causes three and four seek damages under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, alleging that the state and federal defendants conspired under color of state law to deprive plaintiff of federally guaranteed rights, namely his statutory and constitutional rights to a hearing and his employment rights under the Universal Military Training and Service Act. 50 U.S.C.App. § 459.

Causes five and six, brought under pendent jurisdiction, seek damages against several of the defendants for slander and for wrongful interference with an employment relationship.

The affidavits submitted by several of the federal defendants, and considered by the district court in ruling on the summary judgment motion, are rather grudging in providing information with respect to Dr. Kletschka's difficulties at the hospital and the school leading up to his transfer. In general they cite the investigation report ordered by Dr. Driver as the basis for the transfer, but the report is not in the record and apparently it has not been shown to the plaintiff. Consequently there is little in the record to refute the contention of plaintiff that his transfer was a punitive measure, designed to discipline him for unspecified

transgressions, as the result of a conspiracy. Dr. Driver, in his affidavit of May 9, 1967, does explain the transfer as stemming from the "strained" relationships between the plaintiff and his colleagues, but we are told nothing concerning the reasons for this strain nor cited any facts indicating that the strain indeed existed.

The affidavits of the two state defendants, Mueller and Jacobsen, are wholly uninformative concerning the charges of the complaint. Both are content to describe their duties and rest their defense upon the doctrine of sovereign, or official, immunity.

■ Summary judgment may not be rendered unless the pleadings and supplementary affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In that light we proceed to consider the myriad claims presented by this suit.

■ As a preliminary matter we note that venue is properly laid in the Northern District of New York, contrary to the alternative holding of the district court. It was in this district that "the claim arose," within the meaning of 28 U.S.C. § 1391(b). In addition venue also seems proper under 28 U.S.C. § 1391(e). See Powelton Civic Home Owners Ass'n v. Department of Housing and Urban Development, 284 F.Supp. 809, 832-834 (E.D.Pa.1968).

I. *Administrative Procedure Act*

The Administrative Procedure Act provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C.A. § 702.

But this right to review does not apply to agency action "to the extent that * * [the] action is committed to agency discretion by law." 5 U.S.C.A. § 701(a) (2). We hold that the propriety and wis-

dom of the V. A. decisions relating to plaintiff's transfer and research funds are committed to agency discretion, with the one exception to be noted below, and hence may not be subjected to general review in the courts. We reach the same conclusion with respect to plaintiff's claims against the Civil Service Commission for its refusal to reverse the actions of the V. A.

█ In the absence of a statute which explicitly precludes judicial review, and we find none here, the extent to which agency action may be scrutinized by the courts depends on an assessment of the need for, and feasibility of, review on the one hand and the possible disruption of the administrative process which might be occasioned by review on the other. See Cappadora v. Celebrezze, 356 F.2d 1, 5–6 (2d Cir. 1966); *see generally* Saferstein, Nonreviewability: A Functional Analysis of "Committed to Agency Discretion," 82 Harv.L.Rev. 367 (1968).

█ It would not be feasible for the courts to review decisions by the V. A. awarding or refusing to award research grants. Each such decision involves a determination by the agency with respect to the relative merits of the many proposed research projects for which funds are sought. This determination requires considerable expertise in the scientific, medical, and technical aspects of each application. A reviewing court would have to master considerable technical data before it could even attempt to determine whether one application, Dr. Kletschka's for example, was so superior to the others that its rejection by the V. A. was an abuse of discretion. Furthermore, even if these technical aspects were mastered it would be difficult for the court to review the judgments of relative personal competence which necessarily play a role in the agency determination. In this instance the final decision to withdraw plaintiff's research grant was made by heart research specialists employed at the V. A. facilities in Houston. We do not believe it would be practical for the district court to review such a decision, resting on complex and subtle evaluations of the technical merit of plaintiff's project and the professional competence of the plaintiff himself.

The decision to transfer the plaintiff, while it did not involve any considerations of scientific expertise beyond the competence of a court, did purportedly rest on a judgment that the strained personal relationships between plaintiff and members of the hospital staff were interfering with the work at the hospital. This would appear to provide a permissible basis for a transfer in the absence of any statutory or regulatory provisions prohibiting the consideration of such factors. Obviously we cannot review the wisdom or good faith of this transfer without subjecting all such personnel decisions to a similar review. Such a course would encourage a vast quantity of litigation and deprive the V. A. administrator of an element of flexibility which is necessary if he is to operate his department efficiently. Where the challenged personnel decision falls short of discharge we believe that, in general, the courts should seek to discourage arbitrary agency action by enforcing the various procedural rights of affected employees, and not by undertaking a full substantive review of the justification for the decision. See McTiernan v. Gronouski, 337 F.2d 31, 34 (2d Cir. 1964); Baum v. Zuckert, 342 F.2d 145, 147 (6th Cir. 1965); McEachern v. United States, 321 F.2d 31, 33 (4th Cir. 1953). The general refusal of the courts to review the merits of personnel decisions finds additional support in the difficulty of verifying or refuting the wisdom of judgments based on partly intuitive assessments of personal competence and the ability of one man to work in harmony with others. See Saferstein, supra, at 363; cf. Capolino v. Kelly, 236 F.Supp. 955, 956 (S.D. N.Y.1964), aff'd 339 F.2d 1023 (2d Cir.) (per curiam), cert. denied 382 U.S. 858, 86 S.Ct. 114, 15 L.Ed.2d 96 (1965); Democratic State Comm. v. Andolsek, 249 F.Supp. 1009 (D.Md.1966).

█ Plaintiff devotes no attention in his brief to his claim that the refusal

of the Civil Service Commission to grant him relief is reviewable under the A. P. A. He cites no statute giving the Commission authority to review agency decisions concerning transfers or research grants, and has not included in the record any papers relating to proceedings before the Commission. He therefore presents us with no basis for reviewing this portion of the district court's summary judgment order, and it is affirmed. Since this claim under the A. P. A. is the only basis of suit against defendant Macy, we affirm the dismissal of the complaint as to him.

■ While we hold that the V. A. decisions challenged by plaintiff are not reviewable on the basis of the A. P. A. alone for abuse of discretion, we must still consider whether plaintiff can establish that the actions violated a specific statutory right. The enforcement of such a right by the courts may not entail the same practical objections to judicial review which we find persuasive in this case given the absence of any guidelines for the control of the V. A.'s discretion. Thus if plaintiff can point to the violation of a statutory right, which the courts may enforce, "to that extent" the action of the V. A. is reviewable under the A. P. A., since the V. A. is without discretion to violate the right. 5 U.S.C.A. § 701(a); see Saferstein, supra, at 370.

With respect to the research funds plaintiff attempts to find such a right in 50 U.S.C.App. § 459(b) (A) (i), which grants certain reemployment rights to returning veterans who, before their service in the Armed Forces, were employed by the United States government. Such a veteran, "if still qualified" for his former position, is entitled to be "restored to such position or to a position of like seniority, status, and pay." Plaintiff claims that his $20,000 research grant was part of his "status" prior to his military service, and that therefore the V. A. was under a statutory obligation to restore this grant to him upon his return from service.

■ It is far from clear that this reemployment right may be enforced in the courts against the government. Several courts have held that it may not. See Insular Police Comm. v. Lopez, 160 F.2d 673 (1st Cir.), cert. denied 331 U.S. 855, 67 S.Ct. 1743, 91 L.Ed. 1863 (1947); Campbell v. Deviny, 81 F.Supp. 657 (D.D.C.1949), aff'd. 90 U.S.App.D.C. 176, 194 F.2d 881, cert. denied 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643 (1952). There is no occasion to address the propriety of such a broad holding here, however, for we do not think that this claimed right to research status "if still qualified" is sufficiently specific to avoid the objections to judicial review under the A. P. A. Plaintiff's 1961 grant, assuming that it was warranted from the V. A's point of view, might have become unjustified in 1962 because of intervening advances in heart research. An inquiry by a court into whether such a bona fide reason for the withdrawal of the grant existed would pose the same obstacles to effective review which we found to be conclusive against review based on the A. P. A. alone. Consequently we hold that this reemployment statute does not take the V. A. decision regarding the research grant out of the nonreviewable discretionary exception in the A. P. A.

## II. *Statutory Right to a Hearing*

We hold that plaintiff does state a reviewable issue under 38 U.S.C. § 4110 with respect to his right to a hearing before a disciplinary board prior to being transferred. This section requires the Chief Medical Director of the V. A. to appoint disciplinary boards for the purpose of considering charges against physicians, *inter alia*, based upon "inaptitude, inefficiency, or misconduct * * *." The board must hold an evidentiary hearing at which the accused employee is entitled to be represented by counsel. After the hearing the board may recommend to the Administrator "suitable disciplinary action, which shall include reprimand, suspension without pay, reduction in grade, and discharge * * *." These four possible steps do not seem to exhaust

the content of "suitable disciplinary action," and we assume that the board could recommend a transfer as well. While under § 4110(d) the Administrator is free to reject a recommendation for disciplinary action, he is not, as we read the statute, free to impose disciplinary action which the board has not recommended. Indeed V. A. regulations specifically prohibit the use of "staff adjustments," including transfers, "as a device to effect separation of employees when their separation for disciplinary reasons would be proper." V.A.Dept. of Medicine & Surgery, Supplement, MP–5 Pt. 2, ¶ 8(c), June 1, 1964.

Since it is mandatory for the Administrator to convene a board under § 4110, and for the board to grant the charged employee a hearing, and since this right to a hearing can be enforced without involving the courts in the wisdom of an agency decision concerning its personnel, in this respect disciplinary action taken by the V. A. is not "committed to agency discretion by law," and thus is not excepted from the coverage of the Administrative Procedure Act. The district court has jurisdiction under the A. P. A., 5 U.S.C. § 703, to grant declaratory and injunctive relief if plaintiff can establish that he is entitled to the procedural protection afforded by § 4110. Such relief, operating on these individuals in their official capacities, would not contravene sovereign immunity. Cf. Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939, 13 A.L.R.2d 383 (1946). Furthermore, the A. P. A. constitutes a waiver of sovereign immunity concerning those claims which come within its scope. Estrada v. Ahrens, 296 F.2d 690, 698 (5th Cir. 1961); Powelton Civic Home Owners Ass'n v. Department of Housing and Urban Development, 284 F.Supp. 809, 834 (E.D.Pa.1968).

To bring himself within § 4110 plaintiff must prove that his transfer to Houston was in fact disciplinary in character, i. e., based on charges of "inaptitude, inefficiency, or misconduct." We hold that a genuine issue of material fact is presented respecting the reasons for plaintiff's transfer, thereby precluding summary judgment on this portion of the complaint.

It is plaintiff's claim that the transfer was arranged by the defendants to avoid the necessity of taking more direct disciplinary action under § 4110, which would have required that the plaintiff be given notice of the charges against him and the opportunity to appear at a hearing with a lawyer and answer the charges. Several facts give enough credence to this claim to defeat a summary judgment motion. The defendants have failed to offer a convincing nondisciplinary explanation for the transfer. Dr. Driver, as noted above, attributes the transfer to the "strained" relationships between Dr. Kletschka and his colleagues, but does not explain the cause of the strain. In any event, on a summary judgment motion the truth of Dr. Driver's explanation cannot be regarded as established since it is contradicted by plaintiff and to some extent by the facts.

Several factors tend to indicate that the V. A. itself regarded the transfer as disciplinary in character. It was preceded by the awarding of an "unsatisfactory" rating to plaintiff. Based on this rating plaintiff had been summoned to appear before a medical board, apparently to be convened under 38 U.S.C. § 4106 (b), which would have considered the possibility of separating him from the V. A. Department of Medicine and Surgery. Both of these steps seem to involve at least implicit charges of "inaptitude, inefficiency, or misconduct." It is not unreasonable to infer that the transfer, timed to coincide with the withdrawal of the unsatisfactory rating, was regarded by the V. A. as a substitute for either open disciplinary action or a discharge, both of which carry with them a statutory right to a hearing. Indeed the brief for the federal defendants states that "the agency had little choice but to transfer Dr. Kletschka from the Syracuse hospital or bring charges and attempt to dismiss him," thus all but admitting that the transfer was punitive in character.

 Finally, we note that the V. A. has never given Dr. Kletschka a specification of the reasons for the transfer, supporting the suspicion that no reasons exist which the V. A. is willing to subject to scrutiny. It was to guard against the danger of arbitrary treatment of personnel, without a fair opportunity being given the employee to refute whatever charges have been levied against him, that Congress guaranteed the right to a hearing before any disciplinary action could be taken. If this salutary procedural safeguard can be evaded merely by ordering a transfer, with no reasons being given for such action, then § 4110 would mean very little indeed. Disciplinary action by any name requires for its legitimization a full hearing under § 4110.

Plaintiff is entitled to introduce proof establishing that his transfer falls within the disciplinary classification, and, if he can so prove, he is entitled to appropriate declaratory and injunctive relief.

### III. *Constitutional Right to a Hearing*

Plaintiff argues that entirely aside from § 4110 he is entitled to a hearing under the due process clause of the Constitution. He cites as authority Birnbaum v. Trussell, 371 F.2d 672 (2d Cir. 1966). In that case the plaintiff alleged that officials of the state hospital where he worked had conspired with officials of a union to discharge him without a hearing, and that the defendants had made defamatory statements which made it appear to the public that plaintiff had been discharged because of his enmity toward Negroes. This court held that due process requires that a public employee be afforded a fair hearing before being discharged under circumstances which damaged his reputation and his ability to pursue his profession effectively. 371 F.2d at 678.

Adoption of plaintiff's argument would involve a considerable extension of the Birnbaum holding. Cf. Madera v. Board of Educ., 386 F.2d 778, 784 (2d Cir. 1967). Here plaintiff was transferred, rather than discharged, and whatever publicity that was engendered by the transfer did not involve the especially objectionable area of racial aspersions. Indeed, it is not clear that there was any publicity concerning plaintiff's disputes with the hospital and school officials, with the possible exception of the release of the unsatisfactory proficiency rating. Instead plaintiff seems to complain of a whispering campaign against him by the defendants among his Syracuse colleagues.

But while these facts distinguish our case from *Birnbaum* they do not necessarily lead to a different result. A transfer to a distant location might have as severe an effect on the career of a professional man as an outright discharge from government service. And a whispering campaign such as plaintiff alleges could well damage his ability to pursue his profession effectively by undermining his status in the medical community.

We believe that this difficult constitutional issue should be resolved only after the facts surrounding the transfer and the disputes which led up to it are fully developed by the district court. The record before us falls far short of providing a full picture of the facts, especially because of the tactical decision of the defendants to rely on their official immunity defense rather than to respond in detail to the allegations of the complaint. Consequently we also remand this portion of the summary judgment order for further hearing, expressing no view concerning the merits of plaintiff's constitutional claim.

### IV. *Civil Rights Act*

Plaintiff states damage claims under both § 1983, and § 1985 of the Civil Rights Act, 42 U.S.C. § 1981 et seq. We hold that summary judgment on the claims under § 1985 was proper, but that the claims under § 1983 must be remanded for further fact-finding.

 The fourth cause of action in the complaint seems to allege a violation of § 1985(1). This provision of the 1871 Civil Rights Act, which apparently has never been construed by a court, covers

conspiracies which attempt "to prevent, by force, intimidation, or threat, any person from accepting or holding any office * * * under the United States, or from discharging any duties thereof * * *." Since plaintiff makes no mention of this section in his brief, and did not refer to it at oral argument, he has abandoned the claim on appeal.

Plaintiff does rely on his claim under § 1985(3), which reaches conspiracies under color of State law to deprive a person of "the equal protection of the laws." But whatever other rights plaintiff may have been deprived of equal protection is not one of them. The actions taken by defendants were directed only against plaintiff as an individual and not because he was a veteran, or a member of some class or race. A violation of equal protection would be shown if the actions against plaintiff were part of a general pattern of discrimination, or were based on impermissible considerations of race or class, but plaintiff has not raised a genuine issue of fact concerning such discrimination. See Birnbaum v. Trussell, 371 F.2d 672, 676 (2d Cir. 1966); Birnbaum v. Trussell, 347 F.2d 86, 90 (2d Cir. 1965).

To maintain a cause of action under § 1983 plaintiff must show: 1) that he has been deprived of a right, privilege, or immunity secured by the Constitution and laws of the United States; 2) that the defendants subjected plaintiff to this deprivation, or "cause[d]" him to be so subjected; and 3) that the defendants acted "under color of any statute, ordinance, regulation, custom, or usage, of any State * * *." Since we have held that summary judgment was improper on plaintiff's claims that he had been deprived of his constitutional and statutory rights to a hearing it follows that he meets the first of the three above requirements as against a summary judgment motion.

## A. State Defendants

There seems no doubt that the actions taken by the state defendants in this case were taken under color of state law. Their actions, by the allegations, consisted of exerting influence upon the federal defendants, influence they possessed by virtue of the power and authority vested in them under state law. Cf. United States v. Classic, 313 U.S. 299, 325–326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941); Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This informal, behind the scenes exertion of state authority is as much within the scope of § 1983 as the more usual examples of formal and open action leading to the denial of federal rights. The Fourteenth Amendment gave Congress the power to legislate against "State action of every kind" having the effect of impairing federally guaranteed rights, Civil Rights Cases, 109 U.S. 3, 11, 3 S.Ct. 18, 27 L.Ed. 835 (1883), and Congress had exercised that power in § 1983.

The informal nature of the defendants' action here does make it more difficult for plaintiff to prove that the state defendants did "cause" him to be deprived of a federal right. It is clear that the actual deprivation was accomplished through the actions of the federal defendants. Our question is whether the record provides a basis for proof that the state defendants, by virtue of their influence over the operation of the V. A. hospital, may have played a significant role in causing the federal action, so as to raise an issue of fact. We hold that it does.

The most striking evidence concerning the close relationship between the V. A. hospital and the state medical school is a passage in a letter written by defendant Rogers to plaintiff on February 16, 1959, at a time before plaintiff had accepted a position with the hospital:

"This Veterans Administration hospital * * * is next door to the Medical School. It is completely integrated in all departments with the Medical Center * * *. It is customary for the full-time staff at the Veterans Administration Hospital to carry academic appointments in the Medical School departments, and to be consid-

ered as equal members of the various Medical School departments in all respects." Record at 148.

From Dr. Driver's affidavit we learn that the Dean's Committee of the school "assumes a general supervisory aegis over the quality of patient care and training programs in the Veterans Administration Hospital." The school nominates to the V. A. Hospital Director persons for appointment to the V. A. professional staff, although the final decision concerning job applicants remains with the V. A.

This general outline makes it clear that the chief administrators of the medical school are in a position to exert a powerful influence over the personnel policies of the Syracuse V. A. hospital. The V. A. considers its affiliation with the school crucial to its ability to provide a high quality of medical care. Because of this view it has granted to the state defendants, or so plaintiff may be able to prove, considerable control over the personnel of the hospital. Plaintiff may also be able to prove that this control was exerted in his case, with the result that he was transferred as a disciplinary measure without a hearing in significant part because of the wishes of the state defendants. It is his allegation that state defendant Mueller was, along with federal defendant Rogers, one of the originators of the conspiracy. We hold that he has presented a genuine issue of material fact concerning whether the state defendants "caused" the V. A. to deprive plaintiff of a federal right within the meaning of § 1983.

We cannot uphold the defense of official immunity asserted by the state defendants at this time. They rely principally on Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1964), but this case is applicable only to federal officials. Furthermore, we are cited no New York authority which would hold these defendants immune from suit.

Even if New York law does grant defendants immunity this would not be binding on a federal court in an action brought under § 1983. Rather the court must determine under the facts presented whether the policy of liability reflected in the Act requires that the local rule of immunity be overridden, or whether under the circumstances the local rule must be followed to avoid too great an interference with the efficient operation of state government. See Birnbaum v. Trussell, 347 F.2d 86, 88–89 (2d Cir. 1965); cf. Alva Steamship Co. v. City of New York, 405 F.2d 962, 969–971 (2d Cir. 1969). See generally Note, Section 1983: A Civil Remedy for the Protection of Federal Rights, 39 N.Y. U.L.Rev. 838, 852–854 (1964).

## B. Federal Defendants

Plaintiff's basis for suit under § 1983 against the federal defendants is that in depriving plaintiff of a federal right they acted "under color of state law" by virtue of their conspiracy with the state defendants and by virtue of the fact that their actions were partially the product of the influence of the state defendants.

Several cases have held that action technically taken by private individuals was "state action" violative of the Fourteenth Amendment because of the interaction of the private actors with state officials or policies. E. g., Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Lombard v. Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963); Smith v. Hampton Training School for Nurses, 360 F.2d 577, 580 (4th Cir. 1966). The Supreme Court has not resolved whether the action of federal officials may likewise be the subject of a § 1983 suit if there is proof of a conspiracy with state officials. See Dombrowski v. Eastland, 387 U.S. 82, 84, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967).

We can see no reason why a joint conspiracy between federal and state officials should not carry the same consequences under § 1983 as does joint action by state officials and private persons. It was the evident purpose of § 1983 to provide a remedy when federal rights have been violated through the use or misuse of a power derived from

a State. Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). When the violation is the joint product of the exercise of a State power and of a non-State power then the test under the Fourteenth Amendment and § 1983 is whether the state or its officials played a "significant" role in the result. See Burton v. Wilmington Parking Authority, 365 U.S. 715, 722, 81 S.Ct. 856, 6 L.Ed. 2d 45 (1961).

The facts we have just reviewed with respect to the § 1983 claims against the state defendants demonstrate that a triable issue exists with respect to the federal defendants as well. Plaintiff has alleged facts, not directly refuted by the defendants, which entitle him to an opportunity to prove that, paraphrasing *Burton*:

"The State [medical center] has so far insinuated itself into a position of interdependence with * * * [the Syracuse V. A. hospital] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been so * * * ['purely federal'] as to fall without the scope of the Fourteenth Amendment." 365 U.S. at 725, 81 S.Ct. at 862.

However, plaintiff does not state facts sufficient to justify continuance of his § 1983 action against the Washington V. A. officials. Against these defendants plaintiff lodges only general charges of conspiring with the state defendants, alleging no specific overt acts taken in concert with them. Such general allegations may have been sufficient to state a good cause in the complaint, but they became insufficient once opposed by defendants' motion for summary judgment supported by affidavits. The Federal Rules specifically provide that in such a situation:

"* * * an adverse party may not rest upon the mere allegations or denials of his pleading, but his response * * * must set forth specific facts

showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In this light the complaint does not state enough facts to raise a triable issue concerning the § 1983 cause against Driver, Engle, and Lee. The sense we get from the allegations is that any conspiracy was hatched at the local level, and that the Washington V. A. officials acted only on the advice of their Syracuse subordinates together with the results of Dr. Driver's investigation. There is no indication that this investigation was under the control or influence of the State defendants. We therefore affirm this portion of the summary judgment order.

The three Syracuse V. A. defendants all plead their official immunity from suit as a bar to the § 1983 action against them. But here the generality of their own affidavits in support of the summary judgment motion is insufficient to support their defense, for the present. All three describe in general terms their duties with the V. A., acknowledge certain facts with respect to their actions which are not in dispute, e. g., that a counselling session with Dr. Kletschka took place, and conclude by stating that whatever actions they took respecting Dr. Kletschka were done as part of their official duties.

A plea of official immunity cannot be sustained until a court has knowledge of the exact nature of the defendants' actions and the precise scope of their official duties. The court can then address the legal question of whether the government's interest in the forthright performance of these duties requires that the officials be held immune from any liability based on their actions. See Barr v. Matteo, 360 U.S. 564, 573–574, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1960).

From the affidavits of these defendants we learn little about the reasons for Dr. Kletschka's transfer and the role of the defendants in bringing it about. They do not directly refute plaintiff's

allegations that the defendants engaged in malicious conspiratorial action at odds with the proper discharge of their official duties. Because of their tactical decision not to respond to the allegations the defendants cannot say that there is not a genuine issue of fact respecting the probability of the plaintiff's charges against them.

Since we do not have an adequate record to decide the immunity question this aspect of the suit must wait resolution by the district court after hearing.

### V. *Pendent Jurisdiction*

Finally we come to the state claims for slander and for tortious interference with an employment relationship, which are brought under the doctrine of pendent jurisdiction. The slander claim is limited to defendants Rogers, Gullick, Mueller, and Lee, while the second count names all defendants save Macy.

There is no real question, given our resolution of the federal claims presented in the complaint, that the district court has the power to retain pendent jurisdiction: Three of the federal claims, on the present record, are substantial; the federal and state claims "derive from a common nucleus of operative fact"; and in light of the allegations of conspiracy, which entail difficult problems of proof, a plaintiff would ordinarily be expected to try both the state and federal claims in one litigation if permitted to do so. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ At present all federal defendants except Macy remain in the suit with respect to the statutory and constitutional claims to a hearing, concerning which only declaratory and injunctive relief is asked, and federal defendants Thomas, Rogers, and Gullick, remain in also with respect to the § 1983 damage action. The state defendants remain in with respect to the § 1983 action. Since all of the defendants save one who are proceeded against in the pendent claims are also before the district court on at least one other claim we believe that the court should retain its pendent jurisdiction over the claims at the present time.

The considerations of judicial economy may change, however, if there is a failure of proof concerning the federal claims, or as the result of pre-trial proceedings. Consequently we leave to the discretion of the district court the reassessment of the wisdom of exercising pendent jurisdiction as the litigation progresses. See United Mine Workers v. Gibbs, 383 U.S. 715, 727–728, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

■ We believe that defendant Driver is immune as a matter of law from a damage action under the circumstances of this case, and consequently the claim asserted against him under pendent jurisdiction is dismissed. Like the defendant in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), Dr. Driver is the head of a federal agency, and there are no facts shown which would indicate that his actions concerning plaintiff were taken beyond the outer perimeter of his line of duty. *Id.* at 575, 79 S.Ct. 1335. As far as the other federal defendants are concerned we repeat our conclusion that not until it becomes clear exactly what actions these defendants took, and what the relation of these actions was to their official duties, will it be possible for the district court to assess properly their respective claims to immunity, regardless of whether *Barr* or a narrower standard of immunity governs.

The order below is reversed and the case remanded for further proceedings not inconsistent with this opinion.