**Aldena ENGLISH et al., Plaintiffs,**

v.

**TOWN OF HUNTINGTON et al., Defendants.**

**69–C–144.**

United States District Court,
E. D. New York.

July 2, 1970.

Jack Greenberg, Michael Davidson, Jonathan Shapiro, Sam Raskin, New York City, for plaintiffs; Jonathan Shapiro, New York City, of counsel.

Nicholas LaCarrubba, Town Atty., of Huntington, for defendants; Andrew E. Ullmann, Deputy Town Atty., of counsel.

Edward R. Neaher, U. S. Atty., E. D. New York, for United States; Cyril Hyman, Asst. U. S. Atty., of counsel.

TRAVIA, District Judge.

This action was brought by an unincorporated association, the Huntington Township Committee on Human Relations ("HTCHR"), and individual plaintiffs, all displacees from an urban renewal area in the defendant Town of Huntington (the "Town") by the time of the writing of this decision. The complaint is framed as a class action by the plaintiffs on behalf of black and Puerto Rican residents of Huntington who have allegedly been deprived of their rights in connection with the urban renewal program and other activities of the Town.

The complaint sets forth three causes of action. The first concerns the alleged failure of the Town and its officials (the "local defendants") and officials of the Department of Housing and Urban Development (the "Federal defendants") to assure adequate relocation housing for those residents of the urban renewal area who have been displaced as a result of the project. The second attacks the issuance of general search warrants to building code inspectors for use in low-rent minority group neighborhoods of the Town. The third challenges the Town's zoning ordinance as denying the equal protection of the laws to minority groups because it has the purpose and tendency to exclude them from the Town by preventing the construction of housing which they can afford.

Both the Federal and the local defendants have moved to dismiss the first cause of action. The local defendants have also moved to dismiss the third

cause of action. These motions attack both the jurisdiction of this Court and the merits of the complaint.

Although the complaint leaves much to conjecture and inference, for the reasons stated below the motions to dismiss must be denied at this time without prejudice to renewal during the trial. The defendants may move at the trial after the Court has heard the plaintiffs' case with respect to the issues of whether administrative remedies have been adequately exhausted, the sufficiency of the size of the class which plaintiffs purport to represent, the adequacy of the proof of a denial of equal protection of the laws, the standing of the unincorporated association, HTCHR, and any other appropriate trial motions.

The first cause of action, around which most of the dispute has centered, substantially alleges the following:

In an application for a grant contract from the Department of Housing and Urban Development ("HUD"), the Town of Huntington established an urban renewal project which provided for the building of 56 middle-income apartments on "Site A" and for 127 middle-income units (later expanded to 300 units) on "Site B" within the Town. Forty low-rent units have also been built. After HUD's approval in 1966, the Town and HUD executed a capital grant contract which included a provision by which the Town (by its Local Public Authority ("LPA")) was required to provide decent and safe relocation housing in the renewal area or another area, with equivalent facilities at rentals within the means of displaced families, reasonably accessible to relocatees' places of work, and equal in number to the number of displaced individuals and families.[1] The Town also agreed to follow HUD poli-

---

1. The text of this contract requirement provides:
 "The LPA shall provide for the relocation of individuals and families displaced from the urban renewal area in the urban renewal area or in other areas, not generally less desirable in regard to public utilities and public and com-
 mercial facilities and at rents or prices within the means of the individuals and families displaced in decent, safe and sanitary dwellings equal in number to the number of and available to such displaced individuals and families and reasonably accessible to their places of employment."

cies, Federal statutory requirements, and regulations of HUD for urban renewal, including the Urban renewal Handbook, RHA 7207.1.

It is claimed that about 174 families were displaced, of whom more than 50% were members of the minority groups represented by plaintiffs, and that the majority of the latter group of families are of low income. Families displaced by the project, the complaint alleges, were unable to obtain adequate relocation housing; that forty units of low-rent housing (public housing) were built with the project, including ten for the elderly, but this number is inadequate for the 174 displaced families; and that the middle-income housing built on sites A and B is beyond the price range of the displaced families.

It is further alleged that racial discrimination in the private housing market, which this Court recognizes exists, prevents the minority group displacees from securing adequate relocation housing within the Town. It is alleged that because of their race, color and origin, plaintiffs have been effectively restricted to securing housing in neighborhoods which have both a high percentage of minority group population and shortages of adequate housing.

It is also claimed that approximately 70 nonwhite and Puerto Rican displaced families now live in relocation housing within the Town which is below the standard for relocation set by the capital grant contract between the LPA and HUD; that many now live in overcrowded apartments and pay higher rents and paid higher purchase prices than are paid for comparable dwellings by whites; that because of the project, fewer low income units of adequate standards now exist in the Town than before the project was initiated; and that many of the displacees have left the Town in order to find housing.

The Federal and local defendants allegedly failed to take affirmative action to insure adequate relocation for plaintiffs' class, a violation of defendants' duties under 42 U.S.C.A. § 1455(c) and the HUD Urban Renewal Handbook, RHA 7207.1. This failure to act, it is alleged, has also deprived plaintiffs of the equal protection of the laws under the Fifth and Fourteenth Amendments to the Constitution and of the equal right to hold and lease property secured under the Thirteenth Amendment and 42 U.S.C.A. § 1982. In addition, plaintiffs allege that the failure to provide adequate relocation housing facilities was intended to force nonwhites and Puerto Ricans out of the Town because of their race in violation of their rights to the equal protection of the laws and to hold and lease property.

Finally, plaintiffs allege that they have exhausted their administrative remedies since the association plaintiff filed a formal complaint with HUD in July 1967 to which they have not yet received any reply. The complaint does not allege that any individual plaintiff has registered a complaint with any of the defendants.

Plaintiffs attack the relocation program on the ground that they have been denied the qual protection of the laws in its execution. They also seek judicial review of unspecified administrative determinations of HUD which approved the program and its operation.

I.

There is no doubt that this Court has subject matter jurisdiction to hear this action. Norwalk CORE v. Norwalk Redevelopment Agency, 395 F. 2d 920, 926 at n. 6 (2d Cir. 1968) ("Norwalk CORE"). The substance of the action is alleged in part to be based on 42 U.S.C.A. § 1983, § 1985 and § 2000d, as well as § 1455(c). Jurisdiction in actions under 42 U.S.C.A. § 1983 is conferred by 28 U.S.C.A. § 1343(3). See Hague v. C.I.O., 307 U.S. 496, 508–513, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Action by Federal officials in conjunction with State officials brings the Federal officials within the jurisdictional purview of § 1343(3). Kletschka v. Driver, 411 F.2d 436, 449 (2d Cir. 1969). Jurisdiction for actions under 42 U.S.

C.A. § 1985 is conferred by 28 U.S.C.A. § 1343(1). Jurisdiction for review of determinations made by HUD under 42 U.S.C.A. § 1455(c) is provided by the Administrative Procedure Act, 5 U.S.C.A. § 701 et seq., which also serves to waive the sovereign immunity of HUD. Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967); Kletschka v. Driver, *supra,* 411 F.2d at 445; Estrada v. Ahrens, 296 F.2d 690, 698 (5th Cir. 1961); Powelton Civic Home Owners Ass'n v. Dept. of H.U.D., 284 F.Supp. 809, 834 (E.D.Pa. 1968); Citizens Committee for the Hudson Valley v. Volpe, 425 F.2d 97 (2d Cir. 1970); Shanks Village Committee, etc. v. Cary, 197 F.2d 212, 214 (2d Cir. 1952); Krawez v. Stans, 306 F.Supp. 1230, 1233 (E.D.N.Y.1969); *see Norwalk CORE, supra,* 395 F.2d at 932 ff. Furthermore, the power granted to the Secretary of Hud to " . . . sue and be sued . . ." in actions involving urban renewal programs, 42 U.S.C.A. § 1456(c) (1), constitutes a waiver of sovereign immunity in suits regarding an alleged failure to perform a duty under 42 U.S.C.A. § 1455(c). Powelton Civic Home Owners Ass'n v. Dept. of H.U.D., *supra,* 284 F.Supp. at 834; *see* Federal Housing Administration, Region No. 4 v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940). *But see* Panama Canal Co. v. Grace Line, 356 U.S. 309, 317, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958).

■ Since plaintiffs have admitted that their individual monetary claims have been aggregated to reach the jurisdictional minimum of $10,000 under 28 U.S.C.A. § 1331, reliance on that section is not appropriate. Rosado v. Wyman, 414 F.2d 170, 176–177 (2d Cir. 1969), reversed on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *see* Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Nor does reliance have to be placed upon 42 U.S.C.A. § 2000d, *see Norwalk CORE, supra,* 395 F.2d at 936 at n. 40, since under Kletschka v. Driver, *supra,* jurisdic-

tion has already been found as to the Federal defendants regarding the alleged denials of equal protection.

### II.

■ Venue and personal jurisdiction over the Federal defendants is proper under 28 U.S.C.A. § 1391(e), since the only defendants outside of the district are the Federal defendants. They may be sued in and served from this district under that section. Liberation News Service v. Eastland, 426 F.2d 1379 at n. 5, 1382 (2d Cir. 1970); Kletschka v. Driver, *supra,* 411 F.2d at 442; Powelton Civil Home Owners Ass'n v. Dept. of H.U.D., *supra,* 284 F.Supp. at 832–834.

### III.

■ Subject to a showing that the class which plaintiff displacees purport to represent is insufficiently large, *see* Moscarelli v. Stamm, 288 F.Supp. 453, 463 (E.D.N.Y.1968); DeMarco v. Edens, 390 F.2d 836 (2d Cir. 1968); Bonner v. Texas City Independent School District of Texas, 305 F.Supp. 600, 617 (S.D.Tex.1969); Fed.R.Civ.P. 23(a) (1), this action has been properly brought as a class action. *See Norwalk CORE, supra,* 395 F.2d at 923 at n. 2, 937 at n. 42. Whether the association plaintiff, HTCHR, may properly represent the interests of members of minority groups depends on a showing at trial that ". . . there is a compelling need to grant them standing in order that the constitutional rights of persons not immediately before the court might be vindicated." Id. at 937; *see* N.A.A.C.P. v. State of Alabama ex rel. Patterson, 357 U.S. 449, 458–460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958).

### IV.

■ Plaintiffs have standing to sue both on their claims of denial of equal protection, *Norwalk CORE, supra,* 395 F.2d at 927, and on their claims that the duties imposed on the defendants by 42 U.S.C.A. § 1455(c) (1) have been violated. *Norwalk CORE, supra,* at 932.

## V.

Plaintiffs will have a heavy burden to bear at trial in order to satisfy the requirement, on their equal protection claim, that they show a failure to assure equal treatment in the operation of the LPA's relocation program between displaced black and Puerto Rican relocatees, on one hand, and displaced whites, on the other. *See Norwalk CORE, supra,* at 929–931. Such a claim, though not expressly alleged in the complaint, may be fairly inferred from it when the complaint is read so " . . . as to do substantial justice." Fed.R. Civ.P. 8(f). With such an allegation, plaintiffs have stated a claim upon which relief can be granted. Their failure clearly to claim and allege, as had been alleged in *Norwalk CORE, supra,* at 924–925, that the defendants had known or intended the discriminatory consequences of their acts when they entered into their loan grant contracts does not per se defeat this action. As the Court in *Norwalk CORE, supra,* at 931 noted, even if uneven treatment of minority groups and whites is not

" . . . inherent in the administration of the program . . . [, the defendants are not excused] from making sure that there is available relocation housing for all displacees [equally]." The meeting of the contractual and statutory standard of providing adequate relocation housing for those able to secure it, but not for minority group members, constitutes " . . . state action [which] affirms the discrimination in the housing market. This is not 'equal protection of the laws.' " *Id.; see* Hobson v. Hansen, 269 F.Supp. 401, 497 (D.D.C.1967).

"The basic constitutional claim raised by the allegations . . . is that . . . [the adequate relocation housing] standard was less sufficiently met in the relocation of Negroes and Puerto Ricans than in the relocation of whites." *Norwalk CORE, supra,* 395 F.2d at 929.

## VI.

Though it is not clear which "final agency action," 5 U.S.C.A. § 704, under 42 U.S.C.A. § 1455(c) [2] of HUD

---

**2.** "Contracts for loans or capital grants shall be made only with a duly authorized local public agency and shall require that—

\* \* \* \* \*

(c) (1) There shall be a feasible method for the temporary relocation of individuals and families displaced from the urban renewal area, and there are or are being provided, in the urban renewal area or in other areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the individuals and families displaced from the urban renewal area, decent, safe, and sanitary dwellings equal in number to the number of and available to such displaced individuals and families and reasonably accessible to their places of employment. The Secretary shall issue rules and regulations to aid in implementing the requirements of this subsection and in otherwise achieving the objectives of this subchapter. Such rules and regulations shall require that there be established, at the earliest practicable time, for each urban renewal project involving the displacement of individuals, families, and

business concerns occupying property in the urban renewal area, or [a] relocation assistance program which shall include such measures, facilities, and services as may be necessary or appropriate in order (A) to determine the needs of such individuals, families, and business concerns for relocation assistance; (B) to provide information and assistance to aid in relocation and otherwise minimize the hardships of displacement, including information as to real estate agencies, brokers, and boards in or near the urban renewal area which deal in residential or business property that might be appropriate for the relocating of displaced individuals, families, and business concerns; and (C) to assure the necessary coordination of relocation activities with other project activities and other planned or proposed governmental actions in the community which may affect the carrying out of the relocation program, particularly planned or proposed low-rent housing projects to be constructed in on [or] near the urban renewal area.

(2) As a condition to further assistance after August 10, 1965 with respect to each urban renewal project involving the displacement of individuals and fam-

the plaintiffs seek to have this Court review, any rejection of this claim at this time would be premature. However, plaintiffs will have to specify prior to trial what determinations they seek to have reviewed. The dispute over the meaning of 42 U.S.C.A. § 1455(c) (2), *see Norwalk CORE, supra,* at 932 at n. 24, may be discounted since that section is not applicable to the present action because "Federal recognition," 42 U.S. C.A. § 1460(k), was granted before August 10, 1965, *see* Pub.L. 89–117, § 305(c). The requirements of § 1455(c) (1) do not appear to be met merely by the inclusion of a provision for a program of adequate relocation housing in a loan contract between HUD and LPA. Instead, the provision creates rights, enforceable both by the Federal government and by displacees. *See Norwalk CORE, supra,* at 934. Furthermore, § 1455(c) (3), added on December 24, 1969, by Pub.L. 91–152, § 209, suggests that the duty to provide adequate relocation housing is a continuing one. *Cf.*

Western Addition Community Org. v. Weaver, 294 F.Supp. 433, 436–437 (N. D.Cal.1968) (application by HUD of § 1455(c) (2) to pre-August 10, 1965 projects).

■ Of course, any review of determinations by HUD would be circumscribed by the limits established in the Administrative Procedure Act, 5 U.S.C. A. § 706.[3] *Norwalk CORE, supra,* 395 F.2d at 935 at n. 33, 937[4]; *cf.* Western Addition Community Org. v. Weaver, *supra,* 294 F.Supp. at 437–440.

## VII.

At the present time, plaintiffs' administrative remedies appear to have been exhausted. Nearly three years have passed since the submission of HTCHR's complaint to HUD and there has been no response. Although HUD's regulations, 24 C.F.R. § 3.3(c), refer to the requirement that an urban renewal plan provide for adequate relocation facilities as specified in the Urban Renewal Handbook,

ilies. the Secretary shall require, within a reasonable time prior to actual displacement, satisfactory assurance by the local public agency that decent, safe, and sanitary dwellings as required by the first sentence of this subsection are available for the relocation of each such individual or family.

(3) Within one year after December 24, 1969 and every two years thereafter, the Secretary shall review each locality's relocation plan under this subsection and its effectiveness in carrying out such plan."

3. 5 U.S.C.A. § 706 provides:
"To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."

4. "In determining whether there has been compliance with section [1455(c)] . . . courts will evaluate agency efforts and success at relocation with a realistic awareness of the problems facing urban renewal programs. Objections by individual displacees based on too literal an interpretation of the Act's standards could unnecessarily interfere with programs of benefit to the entire community." *Norwalk CORE, supra,* at 937.

RHA 7200 through 7228, no provision for complaints by aggrieved persons appears in the regulations governing urban renewal assistance. *Compare* 24 C. F.R. § 3.1, et seq., *with* 24 C.F.R. § 1.7. *See* Powelton Civic Home Owners Ass'n v. Dept. of H.U.D., *supra*, 284 F.Supp. at 829–832, 835–839; *cf.* Hicks v. Weaver, 302 F.Supp. 619, 624–627 (E.D.La. 1969) (delay in filing court action due to delay in determination by agency; no laches).

 Hicks v. Weaver, *supra*, at 626 suggests that the filing of an administrative complaint by one person, not appropriately a party, may inure to the benefit of the members of the class of plaintiffs. That only the HTCHR filed a complaint with HUD here does not require a finding of failure to exhaust remedies by the other plaintiffs, especially since the availability of remedies is questionable and no response has ever been given to the complaint that was filed.

### VIII.

 Plaintiff's third cause of action, which alleges racially discriminatory use of the Town's zoning ordinance, is properly within the jurisdiction of this Court. 42 U.S.C.A. § 1983; 28 U. S.C.A. § 1343(3). A zoning ordinance may be attacked on Fourteenth Amendment grounds in a Federal court. Township of River Vale v. Town of Orangetown, 403 F.2d 684 (2d Cir. 1968) (deprivation of property without due process). No "direct" injury to plaintiffs' property is necessary to their standing to challenge the ordinances as unconstitutionally depriving them of the equal protection of the laws. *Cf. id.* Here, too, of course, plaintiffs will have a heavy evidentiary burden to meet and further discussion regarding the merits of plaintiffs' claim will be necessary after the record has been developed at trial.

Accordingly, it is

Ordered that defendants' motions to dismiss the first and third causes of action are denied.