671 F.2d 1214
 ILLINOIS TERMINAL RAILROAD COMPANY, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents.
and
Chicago and North Western Transportation Company,
Intervenor/Respondent.
 No. 81-1475.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 14, 1981.
Decided March 11, 1982.
 
 William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Margaret G. Halpern, Attys., Dept. of Justice, Richard A. Allen, Gen. Counsel, Ellen K. Schall, Deputy Associate Gen. Counsel, Laurence H. Schecker, Atty., I. C. C., Washington, D.C., for respondents.
 Steven J. Anthony, Gen. Counsel, Illinois Terminal R. Co., St. Louis, Mo., Peter A. Greene, Peter R. Reilly, Thompson, Hine & Flory, Washington, D.C., for petitioner.
 Louis T. Duerinck, Stuart F. Gassner, Robert T. Opal, Chicago, Ill., for intervenor, Chicago and North Western Transp. Co.
 Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and LARSON, Senior District Judge.*
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 This matter is before the court on the petition of the Illinois Terminal Railroad Company (Illinois Terminal) for review of a decision of the Interstate Commerce Commission pursuant to 28 U.S.C. §§ 2321(a), 2344 (1976) and 28 U.S.C.A. § 2342(5) (West Supp.1981). The ICC decision which Illinois Terminal asks us to set aside had reversed a favorable decision of an administrative law judge (ALJ).
 
 I. Facts
 
 2
 Illinois Terminal is a rail carrier providing service across the Mississippi River at St. Louis, Missouri. It interchanges traffic with Chicago and North Western Transportation Company (CNW) and other railroads for eastern movements of traffic. Illinois Terminal and CNW divide the revenues they receive for traffic interchanges. The division of revenues is governed by a 1945 agreement between Illinois Terminal and CNW called "Division Sheet No. 18515,"[1] which states in pertinent part: "On traffic to or from St. Louis, Mo., deduct current Mississippi River bridge toll before prorating and add to the proportion of the Illinois Terminal R.R. Co." Thus, Division Sheet No. 18515 allows Illinois Terminal to keep all of the bridge toll revenue. Only after bridge tolls are deducted does Illinois Terminal have to start sharing revenue with CNW.
 
 
 3
 The parties dispute the meaning of the phrase "bridge toll." The dispute arises from an amendment to Division Sheet No. 18515 added by Illinois Terminal in 1968. The amendment is Illinois Terminal's adoption of Division Circular No. 16-A of the Terminal Railroad Association of St. Louis. The Division Circular is entitled "Proportion of established through rates which will be accepted by this carrier for the transfer of freight across the Mississippi River." Included in the Division Circular are Items 2 and 3 which state:
 
 
 4
 Item No. 2-CHARGES FOR HANDLING INTERMEDIATE TRAFFIC (Traffic handled between connecting lines by Terminal Railroad Association of St. Louis; Line to Line interchange traffic).
 
 CONSULTA DE MERY
 
 5
 Loaded Cars (Including Part Loads) Between connecting Lines .............. $83.49 per car.
 
 
 6
 ....
 
 
 7
 Item No. 3-CHARGES FOR HANDLING TRAFFIC ORIGINATING, TERMINATING OR STOPPING TO PARTIALLY LOAD OR UNLOAD AT INDUSTRIES SERVED BY TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS.
 
 
 8
 Loaded Cars (Including Part Loads); Add to the amount shown in Item No. 2 an additional charge of ..................... $107.84 per car.
 
 
 9
 The parties agree that Item 2 is a bridge toll, but they contest whether Item 3 is a bridge toll.
 
 
 10
 Illinois Terminal began computing both Items 2 and 3 as bridge tolls in 1970. In June 1975, CNW began to file statements of difference. CNW asserted that Item 3 is a terminal charge (subject to division between Illinois Terminal and CNW) rather than a bridge toll. Illinois Terminal refused to honor the statements of difference.
 
 
 11
 In May 1979, CNW filed with the ICC a petition for a declaratory order. The matter was referred to an ALJ for an initial decision. On February 26, 1980, the ALJ ordered that the proceeding be discontinued. The ALJ reasoned that Division Sheet No. 18515 allowed Illinois Terminal to deduct bridge tolls regardless of how the charge is expressed, and Illinois Terminal had chosen to express those charges by adoption of Division Circular 16-A. The ALJ noted that Division Circular 16-A covered only river transfer charges, and he equated river transfer charges with bridge tolls.
 
 
 12
 On September 5, 1980, a review board of the ICC[2] reversed the ALJ's decision. The board reasoned that not every river transfer charge is a bridge toll and the disputed charge is a terminal charge rather than a bridge toll. The ICC denied Illinois Terminal's petitions to stay and to review the board's decision. Illinois Terminal then filed its petition for review in this court. CNW was granted permission to intervene in support of respondents ICC and the United States.
 
 II. Issues
 
 13
 The issues before this court are whether the ICC had jurisdiction in this matter and whether, in light of the applicable scope of review, the ICC decision is substantively correct.
 
 A. ICC Jurisdiction
 
 14
 Under 49 U.S.C. § 10705(b) (Supp. III 1979), the ICC can prescribe rate divisions when the parties agree to unreasonable rates in violation of § 10701, and § 10705(e) allows the ICC to take such action when a complaint is filed. Illinois Terminal asserts that the ICC lacks jurisdiction in this case because the ICC was not asked to make a reasonableness determination in the instant case, and only a petition for a declaratory order, rather than a complaint, was filed. Illinois Terminal argues that there is no statute authorizing the ICC to interpret contract terms, and therefore this matter should have been litigated in a court.
 
 
 15
 The ICC acted properly in hearing this case. The Administrative Procedure Act authorizes agencies to issue declaratory orders to remove uncertainty. 5 U.S.C. § 554(e) (1976).[3] Of course, § 554(e) does not allow an agency to issue a declaratory order on any subject matter; there must be some underlying authority. The ICC concedes that § 10705 is not the source of that authority. Nevertheless, courts have long recognized that interpretation of terms of art is within the special province or primary jurisdiction of the ICC and therefore should, in the first instance, be decided by the ICC. United States v. Western Pacific Railroad Co., 352 U.S. 59, 62-66, 69-70, 77 S.Ct. 161, 164, 166, 168, 1 L.Ed.2d 126 (1956); United States v. Great Northern Railway Co., 337 F.2d 243, 246 (8th Cir. 1964). The Supreme Court has stated, "(T)he question of tariff construction, as well as that of the reasonableness of the tariff as applied, was within the exclusive primary jurisdiction of the Interstate Commerce Commission." Western Pacific, 352 U.S. at 63, 77 S.Ct. at 164. In the instant case we are dealing with the meaning of a term of art (bridge toll) and the ICC has used the declaratory order statute as a means of acting on a matter within its area of expertise. This is a function for which the ICC is ideally suited.
 
 B. Substantive Review
 
 16
 Having determined that the ICC had authority to issue a declaratory order in this case, we must now decide whether the decision should be set aside on substantive grounds. We first note the proper scope of review. Our scope of review of an order of the ICC is narrow. We are limited to reviewing the record to determine whether the ICC's findings and conclusions are supported by substantial evidence on the record as a whole and whether proper legal standards were correctly applied. City of Cherokee v. ICC, 641 F.2d 1220, 1226-27 (8th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 388, 70 L.Ed.2d 206 (1981), and cases cited therein. See also Illinois Central Railroad Co. v. Norfolk & Western Railway Co., 385 U.S. 57, 65-66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966); 5 U.S.C. § 706(2)(E) (1976). Among the legal standards is the requirement that the decision must not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (1976). We also note that courts should defer to ICC interpretation of technical terms. Great Northern Railway, 337 F.2d at 246; Western Oil & Fuel Co. v. Great Lakes Pipe Line Co., 210 F.2d 490, 493 (8th Cir. 1954).
 
 
 17
 Applying this standard of review, we affirm the ICC's order. The review board concluded that Item 3 in Division Circular 16-A was a terminal charge rather than a bridge toll. Terminal charges can include, among other things, charges for switching, storage, elevation, and cartage. Associated Jobbers of Los Angeles v. Atchison, Topeka & Santa Fe Railway Co., 18 I.C.C. 310, 315 (1910). The ALJ, on the other hand, noted that the Division Circular's title page referred to rates for the transfer of freight across the Mississippi River, and he equated river transfer charges with bridge tolls. He decided, therefore, that everything included in the circular was a bridge toll.
 
 
 18
 The review board disagreed, concluding that not every river transfer charge is a bridge toll. Because Division Sheet No. 18515 allows Illinois Terminal to deduct only those river transfer charges which are bridge tolls, the board believed it necessary to decide whether Item 3 was a bridge toll.
 
 
 19
 The review board then went on to hold that Item 3 is not a bridge toll. The board examined the language of Item 3 and the nature of the costs involved, and decided that Item 3 dealt with terminal service after the traffic crossed the bridge. In examining the language, the board noted that Item 3 does not use the phrase "bridge toll." As to the different costs, the board cited Norman Lumber Co. v. Louisville & Nashville Railroad Co., 29 I.C.C. 565, 569-70 (1914), to show that bridge tolls have historically been distinct charges from trans-river movement charges. This distinction, the board reasoned, was implicitly recognized in the separate itemization of the charges in the division circular. The board buttressed its conclusion by noting that the division circular had been in effect for two years before Illinois Terminal started treating Item 3 as a bridge toll.
 
 
 20
 As indicated by the above citations, the ICC decision was supported by the evidence. Contrary to Illinois Terminal's assertions, "bridge toll" is a term of art in the railroad industry and, therefore, we give great deference to the ICC's interpretation. The language of Item 3, its separation from Item 2, Illinois Terminal's failure to treat the charge in Item 3 as a bridge toll for two years, and the historic use of bridge tolls support the ICC's interpretation. The ICC perceptively noted that Item 3 should not be considered a river transfer charge since "the cost to Illinois Terminal for the river crossing is the same whether the shipment originates or terminates in St. Louis or whether it moves in overhead service to or from points beyond St. Louis."
 
 
 21
 Illinois Terminal argues that the ICC decision rested on a belief that the charge was a discriminatory rate in violation of 49 U.S.C. §§ 10701, 10741 (Supp. III 1979), even though the issue of discrimination had not been raised before the ICC. Illinois Terminal's argument is based on the part of the ICC opinion stating: "Thus, if Item 3 were to be applied as an additional bridge toll for bridge traffic originating or terminating at St. Louis, but not for bridge traffic moving in overhead service, such a provision would discriminate against the former traffic and favor the latter type of traffic." As explained above, other parts of the ICC opinion support its conclusion. Therefore, the lack of support for a discrimination claim does not compel us to set aside the decision. Accordingly, the decision of the ICC is affirmed.
 
 
 
 *
 The Honorable Earl R. Larson, Senior United States District Judge, District of Minnesota, sitting by designation
 
 
 [1]
 Division sheets are agreements among railroads to divide equitably and fairly among the railroads furnishing transportation services the revenues collected from shippers. See Chicago & North Western Transp. Co. v. Atchison, Topeka & Santa Fe Ry. Co., 609 F.2d 1221, 1223 (7th Cir. 1979). The ICC leaves divisions of revenue in the first instance to the agreement of carriers, but it imposes on carriers the duty to agree to reasonable divisions. 49 U.S.C. § 10701(a) (Supp. III 1979)
 
 
 [2]
 The ICC delegates its power to make administratively final decisions to employee review boards. 49 C.F.R. § 1011.6(g) (1980); 49 U.S.C. §§ 10304, 10305 (Supp. III 1979)
 
 
 [3]
 Section 554(e) reads: "The agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty."