736 F.2d 1260
 James MOORE, Appellee,
v.
Donald L. CUSTIS, Chief Medical Director Veterans
Administration, Joseph L. Kurzejeski,
Administrator, Veterans Administration
Hospital, Columbia, Missouri,
Appellants.
 No. 83-2047.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 12, 1984.
Decided June 22, 1984.
 
 Robert J. Swift, Jr., Carson, Monaco, Coil, Riley & McMillin, P.C., Jefferson City, Mo., for appellee.
 Robert G. Ulrich, U.S. Atty., Kansas City, Mo., J. Paul McGrath, Asst. Atty. Gen., William G. Kanter, Daniel Bensing, Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for appellants.
 Before ROSS, ARNOLD and FAGG, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 This case arises out of disciplinary action taken by the Veterans Administration (V.A.) in ordering the demotion and transfer of Dr. James Moore. The district court[1] upheld the demotion, but permanently enjoined the transfer, ruling that it was unauthorized by statute. The V.A. invokes the jurisdiction of this court under 28 U.S.C. Sec. 1291 (West.Supp.1983), which governs all final decisions of district courts. For the reasons stated herein we reverse the district court's judgment with respect to the transfer.
 
 FACTS
 
 2
 At the time this action arose, Dr. James Moore was Chief of Dental Services at the Truman V.A. Hospital in Columbia, Missouri. Two professional employees filed a complaint against Dr. Moore regarding his abusive conduct with other personnel, and with patients. Subsequently a three-member disciplinary board was convened to conduct an investigation into the charges as prescribed by 38 U.S.C. Sec. 4110 (1979). The board conducted hearings to investigate the charges, and eventually sustained four of the seven charges made against Dr. Moore: 1) using disrespectful and insulting language to and about Medical Center management and Dental Service staff;[2] 2) failing to observe and enforce agency policy by regularly taking, and allowing staff to take, excessive lunch periods; 3) disproportionately favoring subordinates, i.e., failing to deal impartially with employees; and 4) having a subordinate assist in a personal family matter. The board recommended demotion as the appropriate disciplinary response, but considered a transfer to be too severe.
 
 
 3
 The Chief Medical Director reviewed the findings of the board, and ordered both a demotion and transfer. Following an appeal by Dr. Moore, this order was affirmed by the Administrator. Thereafter, the district court issued a temporary restraining order enjoining the transfer pending a resolution of the dispute.
 
 
 4
 After reviewing the case on the merits, the district court determined that the demotion was proper, but that the transfer was improper because the V.A. had not prescribed a transfer as an appropriate disciplinary action.[3] The court held that such action was in violation of 5 U.S.C. Sec. 706(2)(C) (1977), which requires agency action to be held unlawful if "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Id. The court supported its conclusion as follows:
 
 
 5
 The statute clearly states that the disciplinary board's recommendations are bound by the limits prescribed by the Administrator. The V.A. has prescribed five types of disciplinary action. They are, in order of severity, admonishment, reprimand, suspension, demotion and discharge. See 8A(4)(b)(1)-(5) of the V.A. disciplinary regulations. This prescription includes "suspension" which was not expressly listed in the statute. While the V.A. might have prescribed a "transfer" as an appropriate disciplinary action, it did not. And though the Administrator is not required to accept the recommendations of the disciplinary board, any modifications must be consistent with the limitations that have been prescribed.
 
 
 6
 565 F.Supp. at 50.
 
 ISSUE
 
 7
 On appeal we are asked to resolve the following issue: whether the decision to transfer Dr. Moore was within the V.A.'s authority, and if so, was the decision arbitrary and capricious.
 
 DISCUSSION
 A. Scope of Review
 
 8
 In Brown v. United States Department of Interior, 679 F.2d 747 (8th Cir.1982), this court defined the standard to be employed when reviewing a district court's opinion regarding the propriety of an administrative agency's decision.
 
 
 9
 On appeal from the district court, the appellate court "must render an independent decision on the basis of the same administrative record as that before the district court; the identical standard of review is employed at both levels; and once appealed, the district court decision is accorded no particular deference." First National Bank of Fayetteville v. Smith, 508 F.2d 1371, 1374 (8th Cir.1974), cert. denied, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975). The standard of review is that set out in the Administrative Procedure Act, 5 U.S.C. Sec. 706:
 
 
 10
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
 
 
 14
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]
 
 
 15
 Id. at 748-49. While it is true that courts should not "rubber-stamp * * * administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute," Bureau of Alcohol, Tobacco & Firearms v. Federal Labor Relations Authority, --- U.S. ----, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983), quoting NLRB v. Brown, 380 U.S. 278, 291-292 (1965), it is equally well established that great deference should be accorded an administrative agency's interpretation of its own regulations. Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Illinois Terminal Rail Co. v. ICC, 671 F.2d 1214, 1216-17 (8th Cir.1982). The "arbitrary and capricious" standard is a narrow one, and administrative action can only be regarded as such where there is no rational basis for the action. First National Bank of Fayetteville v. Smith, 508 F.2d 1371, 1376 (8th Cir.1974), cert. denied, 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); Plaza Bank of West Port v. Board of Governors, 575 F.2d 1248 (8th Cir.1978). As we have stated before:
 
 
 16
 To have administrative action set aside as arbitrary and capricious, the party challenging the action must prove that it was "willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case * * *".
 
 
 17
 First National Bank, supra, 508 F.2d at 1376 (citation omitted). With these standards in mind we review the Veterans Administration's decision to transfer Dr. Moore.
 
 B. Authority to Transfer
 
 18
 The parties agree that the controlling statute in this case is 38 U.S.C. Sec. 4110(d) (1979), which provides:
 
 
 19
 (d) A disciplinary board, when in its judgment charges are sustained, shall recommend to the Administrator suitable disciplinary action, within limitations prescribed by the Administrator, which shall include reprimand, suspension without pay, reduction in grade, and discharge from the Department of Medicine and Surgery of such person. The Administrator shall either approve the recommendation of the board, approve such recommendation with modification or exception, approve such recommendation and suspend further action at the time, or disapprove such recommendation. He shall cause to be executed such action as he approves. The decision of the Administrator shall be final.
 
 
 20
 Id. As stated above, the district court held that the Administrator had not prescribed transfer as an appropriate disciplinary action, and, therefore, the decision to transfer was in excess of the authority granted. We believe that the district court erred in this regard.
 
 
 21
 The district court correctly determined that the V.A. has directly prescribed five types of disciplinary action: admonishment; reprimand; suspension; demotion; and discharge. See 8A(4)(b)(1)-(5) of the V.A. regulations. The court also correctly noted that although suspension was not specifically delineated in section 4110(d), the Administrator had the authority to prescribe other disciplinary actions. See Gilbert v. Johnson, 601 F.2d 761, 766 (5th Cir.1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); Kletschka v. Driver, 411 F.2d 436 (2d Cir.1969). The court concluded that the Administrator could prescribe transfer as an appropriate action but he had not.
 
 
 22
 The district court failed to consider a separate regulation on transfers adopted in the 1980 changes to the V.A. regulations. The regulation provides:
 
 
 23
 b. To achieve maximum utilization of employees' abilities and to meet the needs of the VA medical program, intra-VA transfers [of employees with permanent status or probationary employees] may be directed by the Chief Medical Director, except that the Administrator will approve such transfers in positions centralized to the Administrator. Directed transfers will be at VA expense. Transfers of employees having permanent status for reasons of inaptitude, inefficiency, or misconduct can be taken only under the disciplinary action procedures of MP-5, part II, chapter 8, section A. * * *.]
 
 
 24
 11B(4)(b) of the V.A. placement regulations (March 7, 1980) (emphasis added).
 
 
 25
 Clearly, the Administrator would not refer to the fact that the transferring of employees for disciplinary reasons was governed by regulation 8A(4) if that regulation did not include the authority to make such transfers. Furthermore, while one could arguably interpret the regulations differently than did the agency, "[i]n construing administrative regulations, 'the ultimate criteria is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " United States v. Larionoff, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977). We agree with the V.A.'s interpretation of the regulations, and therefore hold that a transfer is a cognizable disciplinary action under section 4110(d).
 
 C. Validity of Dr. Moore's Transfer
 
 26
 Dr. Moore argues that section 4110(d) does not authorize the Administrator to impose a sanction greater than that recommended by a disciplinary board, and that imposing a transfer here amounts to imposing a greater sanction than the board recommended because the transfer sanction was rejected by the board as being "too severe." Dr. Moore relies primarily on Kletschka, supra, 411 F.2d 436, wherein the court stated in dicta that "the Administrator is free to reject a recommendation * * * he is not * * * free to impose disciplinary action which the board has not recommended." Id. at 445. While this language would seem to be on point, a closer examination of Kletschka shows that that case is significantly different than this case.
 
 
 27
 In Kletschka a transfer was ordered by the Administrator without the accused having been afforded the benefit of a hearing as required by the statute. The physician alleged a due process violation claiming that section 4110(d) entitled him to a hearing. The district court granted the V.A. summary judgment on this point. The court of appeals reversed because there was an issue of fact as to whether the transfer was disciplinary in nature entitling the appellant to a hearing. Kletschka did not involve an increase in a recommended penalty, rather it involved a situation where the Administrator imposed a penalty without a recommendation of any sort from the board. The court in Kletschka was correct in holding that the Administrator cannot impose sanctions without first affording an accused a hearing, but that factual circumstance is not present here.
 
 
 28
 The statute grants the Administrator the flexibility to approve or disapprove the board's recommendations, or to approve the recommendations "with modification or exception." 38 U.S.C. Sec. 4110(d) (1979). The board determined that the transfer penalty was "too severe" in this case. The Chief Medical Director and the Administrator disagreed. The Administrator clearly has the authority to reject a board recommendation, or modify a recommendation. Here the Administrator rejected the board's recommendation that transfer was "too severe," and modified the recommendation accordingly. We believe that this action was within the Administrator's broad authority to "cause to be executed such action as he approves." Id.[4] Therefore, we hold that the Administrator clearly had the authority to impose the transfer sanction in this case.
 
 D. Arbitrary and Capricious
 
 29
 Having determined that the sanction of transfer is cognizable under section 4110(d) and V.A. regulations, and that the Administrator had the authority to issue such a sanction in this case, we must now decide whether the Administrator's actions have been shown to be arbitrary and capricious under 5 U.S.C. Sec. 706(2)(A) (1977).
 
 
 30
 Dr. Moore, as the party challenging the Administrator's action, bore the burden of proving that the Administrator acted unreasonably in ordering a transfer. See First National Bank, supra, 508 F.2d at 1376. We find that Dr. Moore has failed to meet this burden. Our review of the record reveals that the Administrator was reasonable in his determination that the transfer was appropriate. The agency sought to relieve the Columbia, Missouri facility of personal animosities and tensions that had resulted from Dr. Moore's conduct, and believed that transferring him from the hospital would best facilitate this goal. This is a wholly legitimate reason for the transfer, and, therefore, we reverse the district court's holding that the decision to transfer was arbitrary and capricious.
 
 CONCLUSION
 
 31
 To summarize our holding: we affirm the district court's determination that demotion was proper in this case. We reverse the district court's order inasmuch as it permanently enjoins the Veterans Administration from transferring Dr. Moore for disciplinary reasons. We hold that a transfer is a valid disciplinary action under section 4110(d) and V.A. regulations, and that the Administrator possessed the authority to order a transfer in this case. Finally, the Administrator's action in ordering Dr. Moore transferred was not arbitrary and capricious.
 
 
 32
 Accordingly, the decision of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri
 
 
 [2]
 To demonstrate the gravity of this offense, we include the board's finding on this point:
 You have used disrespectful and insulting language to and about Medical Center management and Dental Service staff. You have referred to Mr. Joseph Kurzejeski, Medical Center Director, as a "Polock," "dumb f--king Polock," "stupid f--king Polock" and "incompetent Polock." You stated to a Dental Service employee that you would have no qualms about putting a bullet through the head of Mr. Monk, a previous Medical Center Director. You have referred to Ms. Alana Wakenbach, Dental Assistant, Ms. Donna Riley, Dental Assistant and Ms. Colleen Kitchen, former Dental Assistant, as "b---hes." You have referred to Dr. Peter Popovitch, Dentist, as being a "Polock," "dumb Polock," "f--king pig-headed," a "real a--hole," "son-of-a bi--h" and stated that you would "bust his f--king head in." You have referred to Dr. James Kilfoil, Dentist, as being a "dumb son-of-a bi--h" and as a "pig, slob and sponge." Your use of such insulting and disrespectful language is in violation of VA Regulation 820(B) and is also in violation of VA Regulation 810(E) requiring supervisors to set the example for employees.
 
 
 [3]
 The district court's opinion is reported at 565 F.Supp. 48
 
 
 [4]
 We note that the V.A. regulations grant the Administrator the authority to transfer an employee for nondisciplinary reasons at anytime. See 11B(4)(b) of the V.A. placement regulations (March 7, 1980)