# Supreme Court of Texas

### No. 25-0149

In re Demaree Reed,

*Relator*

### On Petition for Writ of Mandamus

**Argued February 12, 2026**

JUSTICE HUDDLE delivered the opinion of the Court.

JUSTICE YOUNG filed a concurring opinion, in which Justice Hawkins joined.

JUSTICE SULLIVAN filed a concurring opinion, in which Justice Busby and Justice Hawkins joined.

Administrative agencies are creatures of statute. They have the power to act only when the Legislature—or, in the case of federal agencies, Congress—grants it to them. Occasionally, the relevant legislative body grants jurisdiction to an agency to resolve matters that otherwise would be decided by a court. But such shared jurisdiction is uncommon. Because altering the usual allocation of power among the branches is so serious, a court considering whether to refer a judicial question to an agency must first determine if the legislative body has in fact authorized the sharing of adjudicative power with respect to the

question at issue. Absent a clear legislative grant of jurisdiction to the agency on the relevant question, a Texas court cannot refer the question, even though the court may regard the agency as an expert on the subject matter and desire the agency's input.

Here, the parties joined issue at summary judgment regarding whether the defendant railroad was a "common carrier" under the Federal Employers' Liability Act (FELA), the sole statute under which the injured plaintiff sued. The trial court, in turn, referred the question to the Surface Transportation Board, a federal agency with jurisdiction over certain railroad disputes. In its petition to the Board following the referral, the railroad sought a determination whether it is a common carrier not under FELA but under a different federal statute. While Congress accorded the Board jurisdiction over some disputes relating to railroads, there is no clear jurisdictional grant empowering the Board to answer the question the parties presented to the trial court: is the railroad a common carrier potentially subject to liability *under FELA*? The trial court thus abused its discretion by issuing the referral order. We conditionally grant mandamus relief.

## I. Background

Demaree Reed, a switchman for Rail Link, Inc., fell from a moving railcar and had his leg amputated as a result. Reed sued Rail Link for negligence and gross negligence under FELA, alleging that Rail Link's failures to establish adequate safety policies, to train, and to provide a safe work environment caused his injuries.[1]

---

[1] Reed also sued a number of other parties. But the order at issue in this proceeding concerns only Rail Link.

Rail Link moved for summary judgment, asserting FELA is inapplicable because Rail Link is not a "common carrier by railroad."[2] The trial court denied Rail Link's motion but on reconsideration agreed to refer the question of Rail Link's common-carrier status to the Surface Transportation Board. To effectuate its decision, the trial court ordered Rail Link to file a petition with the Board for "a determination of Rail Link's status as either a common carrier or as a private contract operator."

In filing its petition with the Board, Rail Link modified the question presented. Rather than ask whether Rail Link is a common carrier under FELA—the question presented in its motion for summary judgment—Rail Link's petition to the Board sought a determination whether Rail Link is a common carrier under a different statute—the ICC Termination Act of 1995 (ICCTA). Notably, ICCTA is not at issue in Reed's personal-injury suit, which alleges a claim for damages under FELA. The Board accepted Rail Link's petition and opened a declaratory-order proceeding. Reed, meanwhile, sought mandamus

---

[2] The relevant section of FELA provides:

Every common carrier by railroad while engaging in [interstate or foreign] commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

45 U.S.C. § 51. Although liability under FELA is expressly limited to a "common carrier by railroad," that term is undefined in the statute. *But see id.* § 57 (expanding the term "common carrier" to include persons or entities responsible for managing and operating a common carrier's business).

relief from the trial court's referral order. At his request, the Board stayed its proceeding while Reed's mandamus petition was pending.

A divided court of appeals denied mandamus relief. 725 S.W.3d 716, 717 (Tex. App.—Houston [1st Dist.] 2024). Noting first that "Reed does not challenge the [Board]'s expertise," the majority concluded, without substantive analysis, that the trial court did not clearly abuse its discretion. *Id.* The dissenting justice would have granted relief. In his view, the Board "is a rate-setting body, and it does not have jurisdiction to determine common-carrier status for tort liability under FELA." ___ S.W.3d ___, 2024 WL 5248555, at *1 (Tex. App.—Houston [1st Dist.] Dec. 31, 2024) (Kelly, J., dissenting from denial of rehearing).

## II. Discussion

Mandamus relief is appropriate if (1) a trial court clearly abuses its discretion and (2) there is no adequate appellate remedy. *In re Ill. Nat'l Ins. Co.*, 685 S.W.3d 826, 834 (Tex. 2024). "An error of law or erroneous application of law to fact is an abuse of discretion." *In re Kay*, 715 S.W.3d 747, 750 (Tex. 2025). Here, Reed assails an order referring to an administrative agency the question of Rail Link's status as a "common carrier by railroad" under FELA. We conclude the trial court clearly abused its discretion in issuing the referral order and Reed lacks an adequate remedy by appeal.

## A. The trial court clearly abused its discretion by referring the question of Rail Link's common-carrier status to the Board.

As "statutory creatures of the Legislature with no inherent authority of their own," *Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 130 (Tex. 2017), administrative agencies have "only those powers expressly conferred and necessary to accomplish

4

[their] duties," *In re CenterPoint Energy Hou. Elec., LLC*, 629 S.W.3d 149, 156 (Tex. 2021) (quoting *Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018)). "[T]here is no presumption that administrative agencies are authorized to resolve disputes." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). Rather, "[w]e presume that district courts are authorized to resolve disputes unless the Constitution or other law conveys exclusive jurisdiction on another court or administrative agency." *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624 (Tex. 2007); *see* TEX. CONST. art. V, § 8. An agency's adjudicative jurisdiction may be either concurrent or exclusive, but in either case, that jurisdiction must be clearly established by the legislative body that created it. *See Univ. of Tex. Rio Grande Valley v. Oteka*, 715 S.W.3d 734, 739 (Tex. 2025). These principles apply equally to federal agencies created by Congress. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022) ("Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided.").

Exclusive jurisdiction arises when "the Legislature has granted [an] agency the sole authority to make an initial determination in a dispute," *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004), or when "a pervasive regulatory scheme indicates that the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed," *Sw. Bell Tel.*, 235 S.W.3d at 624–25. In such a case, until a party exhausts all administrative remedies, "the trial court lacks subject-matter jurisdiction and must

5

dismiss the claims within the agency's exclusive jurisdiction." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 428 (Tex. 2017). No party here contends that the Board has exclusive jurisdiction.

Instead, the parties frame the issue as one of primary jurisdiction—"an administrative law doctrine that arises when a court and an agency have *concurrent* original jurisdiction over a dispute." *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000) (emphasis added). The primary jurisdiction doctrine was first developed by the U.S. Supreme Court in *Texas & Pacific Railway Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907). Formally adopted into Texas law in 1950,[3] the doctrine "operates to allocate power between courts and agencies when *both* have authority to make initial determinations in a dispute." *Subaru*, 84 S.W.3d at 221. When particular issues underlying the dispute "have been placed within the special competence of an administrative body[,] . . . the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956). Our Court has explained that, when the doctrine applies, trial courts "should abate the lawsuit and suspend finally adjudicating the claim until the agency has an opportunity to act on the matter." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 208 (Tex. 2002). Provided the agency has the necessary

---

[3] *See Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 414 (Tex. 1961) (noting that the Court "gave its approval to the application of the doctrine of primary jurisdiction" in *Kavanaugh v. Underwriters Life Insurance Co.*, 231 S.W.2d 753 (Tex. App.—Waco 1950, writ ref'd)); *see also Ferreira v. Butler*, 575 S.W.3d 331, 335 n.29 (Tex. 2019) (noting that, since 1927, the Court's refusal of an application for writ of error or petition for review gives the court of appeals' opinion "the precedential value of one of our own").

authority, we have said that deference is appropriate "when: (1) [the] agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from [the] agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations." *Subaru*, 84 S.W.3d at 221. Importantly, the primary jurisdiction doctrine presumes that the agency has been granted authority to exercise adjudicative power alongside a court. Absent an express grant of concurrent jurisdiction to an agency, there is no shared power to allocate because the adjudicative power remains exclusively in courts.

Reed argues that we should abrogate, or at least narrow, the primary jurisdiction doctrine. In his view, after the U.S. Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024),[4] the primary jurisdiction doctrine is too broad and wrongly permits Texas courts to delegate judicial power to administrative agencies. We need not revisit the contours of Texas's primary jurisdiction doctrine post-*Loper Bright*, however, because we discern no basis for the trial court's conclusion that the Board has concurrent jurisdiction to make the judicial determination the parties put to the trial court. Without a clear grant of concurrent jurisdiction authorizing the agency to adjudicate the dispute, the primary jurisdiction doctrine

---

[4] In *Loper Bright*, the Supreme Court overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), which had obliged courts to defer to administrative agencies on the proper interpretation of certain statutes. *Loper Bright*, 603 U.S. at 412–13.

7

simply does not come into play, and a court may not confer adjudicative power on the agency as the trial court did here.[5]

Whatever benefits may be derived from an administrative agency's input, a court seeking to refer a judicial determination to that agency under the primary jurisdiction doctrine must first confirm the basis for the agency's concurrent jurisdiction over the question in dispute. If the agency "is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief," the doctrine does not apply and no referral may be made. *Foree v. Crown Cent. Petrol. Corp.*, 431 S.W.2d 312, 316 (Tex. 1968). Each of this Court's primary-jurisdiction-doctrine cases involved agencies to which our Legislature clearly afforded some authority over the relevant question in dispute—either the power to issue findings necessary to resolve the disputed question or the power to resolve the dispute entirely.[6]

---

[5] Another reason this case is not a suitable vehicle for the Court to reconsider Texas's primary jurisdiction doctrine is that it involves a referral to a federal agency to determine the proper application of a federal statute. An examination of whether Texas's primary jurisdiction doctrine should be narrowed is better left for a case in which a Texas court refers a dispute to a Texas agency based on the Texas Legislature's grant of concurrent jurisdiction.

[6] *See, e.g.*, *Forest Oil*, 518 S.W.3d at 429–30 (explaining that the Natural Resources Code authorized the Railroad Commission to "make determinations with respect to," and remedy, contamination claims); *In re Sw. Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (noting that the Public Utility Commission "retain[ed] authority to interpret and enforce the interconnection agreements" in dispute); *Butnaru*, 84 S.W.3d at 208–09 (explaining that the Legislature "specifically authorized the [Motor Vehicle] Board to resolve disputes" alleging a violation of the Motor Vehicle Commission Code, which formed the basis of the tort claim); *Cash Am. Int'l*, 35 S.W.3d at 16–18 (confirming that the

The applicability of the primary jurisdiction doctrine is a question we review de novo. *Subaru*, 84 S.W.3d at 222. As explained below, none of the statutes cited by the parties or the trial court clearly confer authority on the Board to determine whether an entity qualifies as a common carrier by railroad under FELA. The trial court thus abused its discretion when it invoked the primary jurisdiction doctrine and referred that question to the Board.

### 1. The Board's enabling legislation does not clearly authorize the Board to determine Rail Link's common-carrier status under FELA.

The natural starting point in locating an agency's authority to resolve a dispute is the legislation that creates and empowers it. Congress first established the Board and gave it authority in ICCTA. *See* Pub. L. No. 104-88, 109 Stat. 803 (1995) (codified at 49 U.S.C. §§ 10101–16106).[7] That statute gives the Board exclusive jurisdiction over "(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules . . . , practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of . . . tracks, or facilities." 49 U.S.C. § 10501(b). ICCTA has been described as granting the Board "exclusive jurisdiction to regulate certain economic and operational aspects of rail transportation," *Horton v. Kan. City S. Ry.*

Consumer Credit Commissioner had authority to resolve disputes over lost goods under the Pawnshop Act).

[7] Congress later amended various portions of ICCTA and established the Board as an independent agency, removing it from the U.S. Department of Transportation's ambit. *See* Surface Transportation Board Reauthorization Act of 2015, Pub. L. No. 114-110, 129 Stat. 2228.

9

*Co.*, 692 S.W.3d 112, 150 (Tex. 2024) (Busby, J., concurring), and ensuring that the Board is the leading authority for laws that "directly attempt to manage or govern a railroad's decisions in the economic realm," *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 807 (5th Cir. 2011).[8]

Rail Link asserts that a determination of its common-carrier status under FELA falls within this general grant of jurisdiction because "the Board has jurisdiction over transportation by rail carrier," 49 U.S.C. § 10501(a)(1), and the statute's definition of "rail carrier" incorporates the concept of a "common carrier," *see id.* § 10102(5) (defining "rail carrier" as "a person providing common carrier railroad transportation for compensation"). In Rail Link's view, the Board thus has jurisdiction to adjudicate common-carrier status *for all purposes*. We disagree. We cannot infer that the Board has power to determine whether Rail Link is a common carrier for purposes of FELA merely because the term "common carrier" also appears in a statute over which the Board does exercise jurisdiction. *See Subaru*, 84 S.W.3d at 220 ("Courts will not imply additional authority to agencies, nor may agencies create for themselves any excess powers."). Such a power is not "reasonably necessary to fulfill [the Board's] express functions or duties." *Pub. Util. Comm'n v. City Pub. Serv. Bd.*, 53 S.W.3d 310, 316

---

[8] That the Board's jurisdiction does not encompass tort-liability questions is demonstrated by the fact that, as one court observed, jurisdiction over "railroad safety" belongs not to the Board but to a different agency—the Federal Railroad Administration. *Bos. & Me. Corp. v. Surface Transp. Bd.*, 364 F.3d 318, 321 (D.C. Cir. 2004). We have also recognized that the Federal Rail Safety Act "delegates rail-safety regulation to the federal Secretary of Transportation, not to the Surface Transportation Board." *Horton*, 692 S.W.3d at 122.

(Tex. 2001). Cloaking the Board with adjudicatory jurisdiction over any common-carrier determination regardless of context would impermissibly permit it to "exercise what is effectively a new power . . . on the theory that such a power is expedient for administrative purposes." *Id.*

Although Congress afforded the Board adjudicatory jurisdiction over disputes involving railroad rates, the Board's enabling statute does not clearly establish that its jurisdiction includes the FELA dispute at issue here. Throughout the statute, Congress specifically described the types of adjudicatory disputes over which the Board may exercise jurisdiction. For example, the Board is tasked with "determining whether a rate established by a rail carrier is reasonable," 49 U.S.C. § 10701(d)(2), and resolving complaints challenging the reasonableness of a rail carrier's rate, *see id.* § 10704. In doing so, the Board is expressly authorized to determine whether that carrier has "market dominance," a defined term. *Id.* § 10707. The Board is also empowered to conduct proceedings on applications to construct and operate (or abandon) railroad lines, *id.* §§ 10901, 10903, and to require the sale of a railroad line after making requisite findings, *id.* § 10907(b)(1).

The Board may also investigate—either on its own or in response to a complaint—whether a "violation" of ICCTA has occurred. *See id.* §§ 11701(a) (granting the Board authority to investigate and find "a violation of this part"), 11702 (granting the Board authority to file a civil action to enjoin licensing violations, enforce limitations on entity combinations, and enforce its own orders), 11704 (providing remedies for a "violation of this part"). And the statute authorizes the Board to

11

prescribe regulations and obtain information from rail carriers, including by subpoena or deposition, to carry out ICCTA's provisions. *See id.* § 1321. Absent from these express grants of adjudicative authority is any clear indication that Congress intended to provide the Board with sweeping power to determine common-carrier status for all purposes or, more precisely, under FELA.

Rail Link points to examples of the Board's having previously determined whether a railroad is a common carrier. Rail Link contends these examples establish the Board's jurisdiction to determine Rail Link's common-carrier status in this case. But in each example Rail Link cites, the Board made its determination in the context of a dispute the Board is expressly authorized by statute to resolve. *See, e.g.*, *Louisville & Jefferson Cnty. Riverport Auth.*, No. FD 36463, 2021 WL 4940260, at *4 (S.T.B. Oct. 22, 2021) (determining that an entity was not operating as a common carrier and thus rejecting a complaint that the entity was illegally operating without the Board's authorization).[9] And even the cited examples in which a court referred the common-carrier question (as opposed to proceedings that originated

_____

[9] *See also Rail-Term Corp.*, No. FD 35582, 2014 WL 7405858, at *1–2 (S.T.B. Dec. 30, 2014) (explaining a previous order finding an entity was a rail carrier under [ICCTA] § 10102(5) for purposes of determining whether the entity was an "employer" under the Railroad Retirement Act, which defines "employer" with reference to the Board's jurisdiction); *Honey Creek R.R., Inc.*, No. AB-865X, 2008 WL 2271465, at *7 (S.T.B. June 4, 2008) (concluding that an entity "became a rail carrier and assumed common carrier obligations," making its abandonment of a rail line subject to the Board's authority); *Greenville Cnty. Econ. Dev. Corp.*, No. FD 34487, 2005 WL 1767438, at *3 (S.T.B. July 27, 2005) (concluding that the Board "has primary jurisdiction to determine whether a railroad's common carrier obligation has been met" pursuant to [ICCTA] § 10501(b)(2)).

12

with the Board) involved disputes clearly falling within the Board's jurisdiction. *See Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 909 n.5, 910–13 (8th Cir. 2015) (affirming a referral to the Board to determine whether a railroad's requirement for transporting hazardous materials satisfied its common-carrier obligations under [ICCTA] § 11101 when "[n]either party dispute[d] both the district court and the STB have jurisdiction to address Appellants' § 11101 claim"); *Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co.*, 215 F.3d 195, 205–06 (1st Cir. 2000) (concluding that referral was proper for the question of whether certain actions violated ICCTA when a claim for that violation could be adjudicated by a district court or the Board); *Finch Paper LLC*, No. FD 35981, 2016 WL 547716, at *1 (S.T.B. Feb. 11, 2016) (accepting a referral from the district court to issue a declaratory order regarding whether "certain practices . . . are unreasonable practices in violation of [ICCTA] §§ 10702 and 10746"). At best, these proceedings establish that the Board may have authority to make a finding on common-carrier status when necessary to resolve a dispute under ICCTA or otherwise within the Board's jurisdiction. But we discern no clear grant of jurisdiction to adjudicate common-carrier status generally or FELA claims in particular.

Rail Link also cites cases in which courts deciding FELA cases have considered the Board's views of whether an entity is a common carrier. *See Gomez v. H&M Int'l Transp., Inc.*, No. 17-CV-231, 2021 WL 236596, at *4 n.5, *7 n.9 (D.N.J. Jan. 25, 2021) (noting that an entity's status as a rail carrier under ICCTA may be relevant to whether it is a common carrier by railroad for purposes of FELA but declining to defer

13

to the Board's interpretation of ICCTA, which is "a different statute from FELA"); *Johnson v. Decatur Junction Ry., Co.*, No. 11-CV-1400, 2014 WL 1282285, at *2 (C.D. Ill. Mar. 28, 2014) (using the absence of the Board's authorization to operate a railroad as one piece of evidence in determining an entity's common-carrier status under FELA); *see also Lone Star Steel Co. v. McGee*, 380 F.2d 640, 642, 648–49 (5th Cir. 1967) (noting that the Interstate Commerce Commission, the Board's predecessor, did not assume jurisdiction over an entity's railroad equipment but concluding that the entity was, in fact, a common carrier under FELA). But the fact that courts determining common-carrier status under FELA have considered the Board's determinations regarding common-carrier status under ICCTA does not equate to a clear grant of jurisdiction to the Board over FELA disputes.

This is not to say that the Board's opinion on whether Rail Link is a common carrier under ICCTA is useless. The trial court could, of course, consider the Board's views regarding Rail Link's common-carrier status under ICCTA as a persuasive indicator of whether Rail Link is a common carrier under FELA. But the trial court erred when it assumed the Board's statutory powers authorized the court to refer to it the common-carrier determination under FELA. *See Foree*, 431 S.W.2d at 317 (rejecting a claim that a statute conferred authority on an agency to act "in a vacuum or as a mere agent of a trial court").

## 2. FELA does not clearly place the common-carrier question within the Board's jurisdiction.

FELA itself likewise includes no explicit grant of jurisdiction to the Board to determine when and whether that statute applies. First enacted in 1908, FELA is "focused primarily upon injuries and death

14

resulting from accidents on interstate railroads." *Urie v. Thompson*, 337 U.S. 163, 181 (1949). It does not afford any power to the Board, much less the power to determine which entities fall within the statute's reach. FELA imposes liability on a "common carrier by railroad" when an employee's injuries result from the carrier's negligence. 45 U.S.C. § 51. In short, FELA "imposes on railroads the duty to use reasonable care in providing their employees a safe workplace." *Union Pac. R.R. Co. v. Nami*, 498 S.W.3d 890, 894 (Tex. 2016).

FELA does not define the term "common carrier," leaving the contours of its scope to be determined by the common law. *See Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165–66 (2007) ("Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law."); *Nami*, 498 S.W.3d at 895 ("In applying FELA, we look to the common law, not of Texas or any particular jurisdiction, but in general."). The hands-off approach to defining the statute's reach is consistent with the rest of the statute, which departs from common-law rules "[o]nly to the extent of [FELA's] explicit statutory alterations." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 544 (1994). And courts, including our country's highest, have comfortably determined whether a defendant is a "common carrier" under FELA for decades.[10]

---

[10] *See, e.g.*, *Wells Fargo & Co. v. Taylor*, 254 U.S. 175, 187 (1920) (defining "common carrier by railroad" as used in FELA to mean "one who operates a railroad as a means of carrying for the public"); *Lone Star Steel*, 380 F.2d at 647 (enumerating "various considerations [that] are of prime importance in determining whether a particular entity is a common carrier"); *Flores v. Coffield Warehouse Co.*, 683 S.W.2d 31, 33 (Tex. App.—Texarkana

In other statutes, Congress has included language that clearly authorizes the Board to make certain relevant determinations with respect to those statutes. For example, the Railroad Unemployment Insurance Act expressly authorizes the Board, on an interested party's request, "to determine after hearing" whether that statute applies. 45 U.S.C. § 351(a). We must give meaning to the absence of any such grant of authority in FELA. *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 497 (Tex. 2013) ("When the Legislature expresses its intent regarding a subject in one setting, but, as here, remains silent on that subject in another, we generally abide by the rule that such silence is intentional."); *see also In re Commitment of Bluitt*, 605 S.W.3d 199, 203 (Tex. 2020) ("When interpreting statutes, we presume the Legislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen."). FELA contains no clear grant of adjudicative power to the Board that could support the trial court's referral order in this case.

### 3. The statute authorizing the Board to issue declaratory orders does not clearly establish the necessary jurisdiction.

Finally, Rail Link points to the Board's statutory authority to issue declaratory orders as a basis for its jurisdiction over this dispute. The federal Administrative Procedure Act (APA) provides that an administrative agency, "in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty." 5 U.S.C.

---

1984, no writ) (concluding that the defendant was "not a common carrier by railroad" and thus not liable under FELA).

16

§ 554(e). Agencies use this power in exercising their statutory mandates, issuing orders to: "(1) interpret the agency's governing statute or own regulations; (2) define terms of art; (3) clarify whether a matter falls within federal regulatory authority; or (4) address questions of preemption." Emily S. Bremer, *The Agency Declaratory Judgment*, 78 OHIO ST. L.J. 1169, 1204 (2017); *see also* Burnele V. Powell, *Sinners, Supplicants, and Samaritans: Agency Advice Giving in Relation to Section 554(e) of the Administrative Procedure Act*, 63 N.C. L. REV. 339, 346 (1985) ("This provision was intended to allow an agency to assess the impact of its statutes and regulations in light of the particularized circumstances of an affected citizen.").

But an agency's authority to issue declaratory orders is not—and cannot be—limitless. Section 554(e) applies only in cases of "adjudication *required by statute* to be determined on the record after opportunity for an agency hearing." 5 U.S.C. § 554(a) (emphasis added). In other words, the authority to issue a declaratory order does not itself create jurisdiction; the agency must have some underlying adjudicative jurisdiction to declare something in the first instance. *See Red Lion Broad. Co. v. Fed. Commc'ns Comm'n*, 395 U.S. 367, 372 n.3 (1969) ("Since the FCC could have adjudicated these questions it could, under the [APA], have issued a declaratory order in the course of its adjudication which would have been subject to judicial review."); *see also Ill. Terminal R.R. Co. v. Interstate Com. Comm'n*, 671 F.2d 1214, 1216 (8th Cir. 1982) ("Of course, § 554(e) does not allow an agency to issue a declaratory order on any subject matter; there must be some underlying authority."). Indeed, the APA itself forbids an agency from issuing any

17

order unless it is "within [the] jurisdiction delegated to the agency and as authorized by law."  5 U.S.C. § 558(b).

The Board cited its general statutory powers when it accepted the trial court's referral.  *See* 49 U.S.C. § 1321.  But as we explain above, the Board's powers are tied to its statutory mandate to carry out the provisions of ICCTA.  *See id.* § 1321(a) ("Enumeration of a power of the Board in this chapter or subtitle IV does not exclude another power the Board may have *in carrying out this chapter or subtitle IV* [i.e., ICCTA]." (emphasis added)).  There is no clear underlying authority supporting the Board's use of a declaratory order to make a judicial determination whether Rail Link is a common carrier subject to FELA liability.

*     *     *

"Courts are not free to outsource to [administrative agencies] the authority to adjudicate common-law questions and factual disputes properly decided by judges and juries."  *CenterPoint Energy*, 629 S.W.3d at 164.  Before referring the threshold question of FELA's application to an administrative agency under the primary jurisdiction doctrine, the trial court first needed to determine that the agency had concurrent jurisdiction to make that finding.  But Rail Link has not shown, and we have not found, any statute clearly authorizing the Board to resolve that question.  The trial court's referral of the common-carrier determination to the Board was thus an abuse of discretion.  *See In re UMTH Gen. Servs., L.P.*, 725 S.W.3d 424, 432 n.45 (Tex. 2025) ("Trial courts have 'no "discretion" in determining what the law is or applying the law to the

facts.'" (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004))).[11]

## B. Reed lacks an adequate remedy by appeal.

To be entitled to relief, Reed must also show that he has no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "We determine whether an adequate appellate remedy exists by weighing the benefits of mandamus review against the detriments." *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021). The risk of significant waste of economic and judicial resources and the potential harm to the separation of powers if the referral order stands both lead us to conclude that Reed has made the necessary showing here.

Although "[c]ourts do not issue relief merely to avoid some 'expense or delay' associated with appellate relief," we are inclined to grant relief "when an appeal would amount to an 'irreversible waste of judicial and public resources.'" *UMTH Gen. Servs.*, 725 S.W.3d at 432 (quoting *Prudential*, 148 S.W.3d at 137). As with a trial court's erroneous exercise of jurisdiction, an agency's unlawful exercise of jurisdiction over a dispute "necessarily costs 'private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *In re J.B. Hunt Transp., Inc.*, 492

---

[11] Even if the Court were to assume the Board has concurrent jurisdiction to decide whether Rail Link is a common carrier under FELA, the referral would be improper because it fails the first prong of the two-part test for determining whether referral under the primary jurisdiction doctrine is proper. *See Subaru*, 84 S.W.3d at 221. Federal and Texas courts regularly decide—and have for decades—whether an entity meets FELA's definition of "common carrier." *See, e.g.*, *Wells Fargo*, 254 U.S. at 187; *Lone Star Steel*, 380 F.2d at 647; *Flores*, 638 S.W.2d at 33. Rail Link has not demonstrated that the Board has any particular expertise in adjudicating tort liability under FELA.

S.W.3d 287, 299 (Tex. 2016) (quoting *Prudential*, 148 S.W.3d at 136). Baseless referrals harm the judicial system, "injecting inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 437 (Tex. 2017) (quoting *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010)). Put differently, appeal "is no remedy at all for the irreversible waste of judicial and public resources that would be required here if mandamus does not issue." *In re Masonite Corp.*, 997 S.W.2d 194, 198 (Tex. 1999).

We are also cognizant that the referral order threatens the separation of powers. "[W]e have granted mandamus relief to halt trial court proceedings that run counter to an administrative agency's exclusive jurisdiction," *In re Oncor Elec. Delivery Co.*, 630 S.W.3d 40, 44 (Tex. 2021), reasoning that our inaction would "disrupt the orderly processes of government," *Sw. Bell Tel.*, 235 S.W.3d at 624, and amount to "judicial appropriation of state agency authority," *Entergy*, 142 S.W.3d at 321. This logic cuts the other way too. *See Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978) (noting that court intervention is permissible "when an agency is exercising authority beyond its statutorily conferred powers"); *see also City of Sherman v. Pub. Util. Comm'n*, 643 S.W.2d 681, 686 (Tex. 1983) (affirming an injunction to prevent an agency from acting beyond its authority). For all these reasons, we conclude that Reed lacks an adequate remedy by appeal.

### III. Conclusion

The trial court clearly abused its discretion when it invoked the primary jurisdiction doctrine to refer the issue of Rail Link's common-carrier status under FELA to the Surface Transportation Board without first confirming that a clear statutory grant of authority permits the Board to resolve the question. We conditionally grant mandamus relief and direct the trial court to vacate its referral order. We are confident the trial court will comply, and the writ will issue only if it does not.

Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 19, 2026